Clifton FRANSAW, Petitioner-Appellant,

v.

James A. LYNAUGH, Interim Director, Texas Department of Corrections, Respondent-Appellee.

No. 85–2635
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1987.
Rehearing Denied April 6, 1987.

---

Clifton Fransaw, pro se. Palestine,

Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner Clifton Fransaw is serving a life sentence in a Texas prison for the offense of voluntary manslaughter. After his conviction was affirmed, Fransaw unsuccessfully sought a writ of habeas corpus from the state courts. He then instituted the present federal habeas proceedings. The district court denied Fransaw's petition, and we affirm.

**Facts and Proceedings Below**

In September 1980, a Texas grand jury indicted Fransaw for the August 31, 1980 murder of Tyrone Boyd. The first paragraph of the indictment charged Fransaw with having "intentionally and knowingly" caused Boyd's death by shooting him with a gun. This constituted murder as defined by Tex.Penal Code Ann. § 19.02(a)(1). The second paragraph accused Fransaw of intending to cause Boyd "serious bodily injury" and causing his death by committing an act clearly dangerous to human life, namely, shooting Boyd with a gun. This constituted murder as defined by Tex.Penal Code Ann. § 19.02(a)(2). For enhancement purposes, the third and final paragraph of the indictment alleged that Fransaw had been previously convicted of robbery.

Fransaw pleaded not guilty to both murder counts, and trial before a jury commenced on September 14, 1981. After the testimony of the state's first two witnesses, Fransaw decided to seek a plea bargain with the prosecution. In exchange for Fransaw's guilty plea to the indictment's first paragraph, the state dismissed the second paragraph predicated on section 19.-02(a)(2). The trial judge accepted this plea arrangement. However, at the sentencing hearing two months later, in November 1981, a misunderstanding surfaced. The trial judge imposed a fifty-year sentence, which Fransaw's counsel believed was ten years longer than what the judge had originally promised. When this disagreement could not be resolved, the judge gave Fransaw the option of withdrawing his guilty plea, and Fransaw did so.

On December 14, 1981, about a month later, Fransaw was tried before a second jury on the original indictment, including both the first and second paragraphs. In his instructions, the judge charged the jury on murder under both the first and second paragraphs of the indictment, thus authorizing conviction of murder either under section 19.02(a)(1) or under section 19.-02(a)(2). The judge also included a charge on the offense of voluntary manslaughter. It is evident (and not disputed) that the precise same shooting was the basis for the charge under section 19.02(a)(1) as well as for the charge under section 19.02(a)(2) and the conviction of voluntary manslaughter. Under Texas law, voluntary manslaughter is committed "under circumstances that would constitute murder under Section 19.-02 of this Code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex.Penal Code Ann. § 19.04(a). At the time of trial, Texas law held that voluntary manslaughter was in all cases a lesser offense included in the charge of murder. *See Paige v. State*, 573 S.W.2d 16, 18 (Tex.Crim.App.1978) ("Since the evidence here was sufficient to prove murder, the greater offense, it was necessarily sufficient to prove voluntary manslaughter, the lesser included offense."); *Brooks v. State*, 548 S.W.2d 680, 682 (Tex.Crim.App. 1977) (referring to voluntary manslaughter as a lesser included offense of murder); *Selman v. State*, 627 S.W.2d 543, 544 (Tex. App.—Amarillo 1982), *aff'd*, 663 S.W.2d 838 (Tex.Crim.App.1984) (en banc); *Ethridge v. State*, 634 S.W.2d 382, 384 (Tex. App.—Austin 1982), *aff'd*, 648 S.W.2d 306 (Tex.Crim.App.1983) (en banc).[1]

On December 15, 1981, the jury convicted

---

1. In *Bradley v. State*, 688 S.W.2d 847 (Tex.Crim. App.1985) (en banc), the Texas Court of Criminal Appeals modified this view and held that a lesser included offense instruction on voluntary manslaughter is appropriate only if there is

Fransaw of voluntary manslaughter[2] and two days later, upon proof of his prior felony conviction, the jury sentenced him to life imprisonment. The Texas Court of Appeals affirmed the conviction in a published opinion, *Fransaw v. State*, 671 S.W.2d 539 (Tex.App.—Houston [14th Dist.] 1982), and the Texas Court of Criminal Appeals refused Fransaw's petition for discretionary review.

Fransaw then petitioned the state courts for a writ of habeas corpus. On July 25, 1984, the state trial court recommended denial of the writ and on January 9, 1985, the Texas Court of Criminal Appeals accepted this recommendation.

Having exhausted his state avenues of relief, Fransaw turned to the federal courts. On February 19, 1985, he petitioned the United States District Court for the Southern District of Texas for a writ of habeas corpus. The district court denied this petition and also denied Fransaw's request for a Certificate of Probable Cause. On March 10, 1986, this Court granted

Fransaw's motion for a Certificate of Probable Cause and this appeal followed.

**Discussion**

Reading Fransaw's pro se brief in this Court liberally, we believe it arguably raises four related issues. First, Fransaw objects that the jury charge may have confused the jurors into convicting him of voluntary manslaughter under section 19.-02(a)(2)—alleged in the previously dismissed paragraph—rather than section 19.-02(a)(1).[3] Fransaw's underlying assumption in this connection is that the double jeopardy clause barred reinstatement of the section 19.02(a)(2) count after the state dismissed it as part of the plea bargain. As will be shown, this assumption is incorrect, so we need not parse the charge to determine whether a reasonable juror could have been misled into convicting Fransaw of voluntary manslaughter as a lesser included offense of section 19.02(a)(2) murder.[4] *See Sandstrom v. Montana*, 442

some evidence that the accused acted in a sudden burst of passion.

**2.** Conviction of the lesser offense acted as an implicit acquittal of the murder charged in the indictment. *See Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

**3.** Contradictorily, Fransaw also argues that the jury charge was deficient for *not* having included an instruction on voluntary manslaughter under section 19.02(a)(2). This contention was not raised below and is hence waived (*see* text accompanying note 7, *infra* ); in any event, it is plainly without merit, because if the charge were legally deficient in this respect there was nevertheless no prejudice to Fransaw, as he was acquitted of murder and convicted of and sentenced for voluntary manslaughter under section 19.04, which makes no distinction between intentional killing and killing by an act clearly dangerous to human life intended to cause serious bodily injury.

**4.** However, we doubt that the charge can be fairly read to authorize a voluntary manslaughter conviction on that basis. It is true that the charge did not expressly state that the jury could not convict of voluntary manslaughter as a lesser included offense of section 19.02(a)(2) murder (or if it found that the killing was not knowing or intentional but was by an act clearly dangerous to human life intended to cause serious bodily injury), and did state that volun-

tary manslaughter was to be considered if the jury had a reasonable doubt of the defendant's guilt of murder under either section 19.02(a)(1) or section 19.02(a)(2). Nevertheless, the charge did not expressly authorize a voluntary manslaughter conviction as a lesser included offense of murder by an act clearly dangerous to human life intended to cause serious bodily injury (section 19.02(a)(2)); and both its sole definition of voluntary manslaughter and its sole statement of the findings on which a voluntary manslaughter conviction could be based contained the element of "intentionally or knowingly" causing death, and did not contain any reference to killing by an act clearly dangerous to human life intending to cause serious bodily injury. The relevant portions of the charge are as follows:

"The defendant, Clifton Fransaw, stands charged by indictment with the offense of murder, alleged to have been committed in Harris County, Texas, on or about the 31st day of August, 1980. The defendant has pleaded, 'Not Guilty.'

"Our law provides that a person commits murder if he intentionally or knowingly causes the death of an individual or if he intended to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

" . . . . [Definitions of "intentionally," "knowingly," "bodily injury," and "serious bodily injury."]

U.S. 510, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979) (stating that whether a jury instruction accords the defendant his constitutional rights "depends upon the way in which a reasonable jury could have interpreted the instructions"); *Tarpley v. Estelle*, 703 F.2d 157, 160 (5th Cir.) (same), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).

The second issue Fransaw raises is based on the same assumption as the first. He appears to argue that we must view the indictment as if it did not contain the section 19.02(a)(2) paragraph. He then asserts that the allegedly confusing jury charge, in creating the possibility of conviction of voluntary manslaughter as a lesser offense under section 19.02(a)(2), violated the Sixth and Fourteenth Amendments by permitting his conviction of a crime not charged in the indictment. *See Tarpley*, 703 F.2d at 160 (granting habeas relief under these amendments because "a reasonable juror could

have understood the charge to allow conviction of an offense other than the one for which Tarpley was indicted"). This argument, like Fransaw's first, is unmeritorious because of the erroneous assumption that the double jeopardy clause prevented the state from reinstating the second paragraph of the indictment.

Third, Fransaw asserts that his conviction of voluntary manslaughter, even if imposed as a lesser offense only under section 19.02(a)(1), is barred by the Sixth and Fourteenth Amendments because he was not specifically indicted for voluntary manslaughter. This claim fails in light of the lesser included offense doctrine.

■■■ Finally, Fransaw contends in this Court that by reinstating the section 19.-02(a)(2) charge, the state "constructively amended" the indictment in violation of state law.[5] Fransaw raised this issue in his

"Now, therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 31st day of August, 1980, the defendant did then and there intentionally or knowingly cause the death of Tyrone Boyd by shooting him with a gun, or if you believe beyond a reasonable doubt that at said time and place the defendant did then and there unlawfully intend to cause serious bodily injury to Tyrone Boyd, and did cause the death of Tyrone Boyd by committing an act clearly dangerous to human life, namely shooting him with a gun, you will find the defendant guilty as charged.

"If you do not so believe, [or] if you have a reasonable doubt thereof, you will find the defendant not guilty.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of murder and consider whether he is guilty of the lesser offense of voluntary manslaughter.

"Our law provides that a person commits the offense of voluntary manslaughter if he intentionally or knowingly causes the death of another person, except that he cause the death under the immediate influence of sudden passion arising from an adequate cause.

" .... [Definitions of "sudden passion" and "adequate cause."]

"Now, if you find from the evidence beyond a reasonable doubt that on or about the 31st day of August, 1980, in Harris County, Texas, the defendant, Clifton Fransaw, did then and there intentionally or knowingly cause the death of Tyrone Boyd by shooting him with a

gun, but you further find and believe from all the facts and circumstances in evidence in the case, the defendant, in killing the deceased, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of voluntary manslaughter.

"If you should find from the evidence beyond a reasonable doubt that the defendant is guilty of murder or of voluntary manslaughter, but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in defendant's favor and find him guilty of voluntary manslaughter.

"If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge, then you will find the defendant not guilty."

The above instructions were followed by a charge on self-defense. Voluntary manslaughter was the only offense charged on other than murder. The jury was also instructed that the indictment was no evidence of guilt. The verdict form contained three blanks: the first for "guilty of murder as charged in the indictment"; the second for "guilty of voluntary manslaughter"; the third for "not guilty."

5. We note that a faulty indictment does not furnish a basis for habeas corpus relief unless its flaws deprive the sentencing state court of jurisdiction. *Alexander v. McCotter*, 775 F.2d 595, 598–99 (5th Cir.1985); *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir.1984).

state court habeas proceedings, where it was implicitly rejected.[6] However, Fransaw did not raise this issue below. Hence, we will not consider it because of our well-established practice of refusing to address issues raised for the first time on appeal. *See Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir.1985); *Baker v. Estelle,* 711 F.2d 44, 46 (5th Cir.1983), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 724, 79 L.Ed.2d 185 (1984).[7]

## A. Double Jeopardy

■ The Fifth Amendment's double jeopardy clause "guards against Government oppression," *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978), and has roots in three common-law pleas that banned the state from retrying a person previously "acquitted, convicted, or pardoned for the same offense." *Id.* at 2192. In light of this common-law heritage, it is not surprising that the Supreme Court has stated that the double jeopardy clause itself incorporates "three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted); *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984) (same). In what has become a classic and oft-quoted passage, the Supreme Court explained that the "underlying idea" of the double jeopardy clause

"is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).[8]

■ Naturally, no question of double jeopardy arises unless jeopardy has first attached sometime prior to what the defendant seeks to characterize as the "second" prosecution. *E.g., Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978); *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 1062–64, 43 L.Ed.2d 265 (1975). Thus in this case, and in others like it, the question of when jeopardy first attached must be answered. In jury trials that moment occurs "when the jury is empaneled and sworn." *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978) (applying this federal standard to the states); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (setting jury empanelment as the time that jeopardy attaches in federal trials). In a plea bargaining context, the rule in this Circuit with respect to the offense pleaded to is that "[j]eopardy attaches with the acceptance of a guilty plea." *E.g., United States v. Sanchez,* 609 F.2d 761, 762 (5th Cir.1980) (acceptance must be unconditional). This seems to be the general rule.[9] And "[i]n a nonjury trial, jeopardy

---

**6.** *See Alexander,* 775 F.2d at 598 (state highest court ruling conclusive on sufficiency of indictment); *Liner,* 731 F.2d at 1203 (same).

**7.** Similarly, although Fransaw raised an ineffective assistance of counsel issue below, we will not consider it for he has not raised it here. *See Hobbs v. Blackburn,* 752 F.2d 1079, 1083 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985); *McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984); *United States v. Johnson,* 718 F.2d 1317, 1325 n. 23 (5th Cir. 1983) (en banc); *Olgin v. Darnell,* 664 F.2d 107, 108 n. 1 (5th Cir.1981).

**8.** The double jeopardy clause is binding on the states. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**9.** *See United States v. Hecht,* 638 F.2d 651, 657 (3d Cir.1981); *United States v. Cambindo Valencia,* 609 F.2d 603, 637 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Bullock,* 579 F.2d 1116, 1118 (8th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *United States v. Vaughan,* 715 F.2d 1373, 1378 n. 2 (9th Cir. 1983) (stating that this is "ordinarily" the rule); *United States v. Cruz,* 709 F.2d 111, 112–14 (1st Cir.1983) (noting that this is "ordinarily" the

attaches when the court begins to hear evidence." *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

The question we decide is whether the State of Texas infringed on Fransaw's double jeopardy protection when it reinstated and tried him on a count it had dismissed after commencement of trial as part of the subsequently vitiated plea bargain. On numerous occasions, courts have held that the defendant may be prosecuted on counts dismissed as part of a vitiated plea bargain. We believe these cases are instructive, even though they involve plea bargains and dismissals entered *before* trial, because of their palpable concern for fairness and the integrity of the plea bargaining process.

The Supreme Court, in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), implicitly approved trial on counts dismissed as part of a voided plea bargain. In that case, the government induced defendant's guilty plea to a lesser unindicted offense by promising not to recommend a sentence. (Apparently the indicted offenses were dropped.) The Court held that the prosecution's subsequent breach of this promise might justify allowing the defendant to withdraw his plea. In that instance, however, the Court noted that "the petitioner will, of course, plead anew to the original charge...." *Id.* at 499 n. 2 (emphasis added). Thus, the Court contemplated a trial on the charges that the prosecution had abandoned.

A leading case in this Circuit is *Harrington v. United States,* 444 F.2d 1190 (5th Cir.1971). Harrington was indicted for violating the Marihuana Tax Act and for illegally transferring marihuana. As part of a plea bargain, the government dismissed the transfer count in exchange for Harrington's guilty plea to the Tax Act count. Harrington then successfully appealed his Tax Act conviction; in that appeal, however, we held that the government could prosecute him on the illegal transfer count. "By moving to vacate judgment on the tax count, Harrington tacitly repudiates the former plea bargain, whereby he obtained dismissal of other counts of the indictment." *Id.* at 1194. As for the double jeopardy implications of this holding, *Harrington* quoted with approval Chief Judge Lumbard's concurrence in *United States v. Liguori,* 430 F.2d 842, 851 (2d Cir.1970), *cert. denied,* 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971), which, on similar facts, stated that the defense of double jeopardy would not bar a trial on the dismissed count. Except for that quotation, *Harrington,* like *Santobello,* did not discuss the double jeopardy question.

In *Moore v. Foti,* 546 F.2d 67 (5th Cir. 1977), this Court was presented with the double jeopardy question when a state prisoner argued that the charge of first degree murder, downgraded to second degree murder as part of a plea bargain, should not have been reinstated following his successful challenge to the plea-based conviction. We affirmed the district court's denial of the habeas writ because, in part, "appellant's successful challenge to his plea-bargained sentence is a tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge." *Id.* at 68.

The cases hold with apparent unanimity that when defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or

rule but asserting that jeopardy need not attach "automatically and irrevocably in all instances when a guilty plea is accepted"). *See also* W. LaFave & J. Israel, 3 *Criminal Procedure* § 24.1 at 64 (1984) (citing cases). *But see United States v. Combs,* 634 F.2d 1295 (10th Cir.1980) (holding that jeopardy does not attach on the mere acceptance of a guilty plea, but that the court must also enter judgment, hence defendant can plead guilty and also be tried if the court postpones entry of judgment), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981); *Gilmore v. Zimmerman,* 619 F.Supp. 859, 862 n. 2 (E.D.Pa.1985) (following the rule but questioning whether jeopardy should not attach until the court enters judgment on the plea), *aff'd,* 793 F.2d 564 (3d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986).

However, it does not follow from this rule that jeopardy attaches to counts *dismissed* prior to trial as part of the plea bargain (and therefore not subject to any plea).

other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain. A comment in *United States v. Gerard*, 491 F.2d 1300 (9th Cir.1974), is characteristic: "If ... a defendant pleaded guilty to one count and the prosecutor dismissed the others, it should be reasonably apparent that the dismissal was in consideration of the plea; if the defendant succeeded in withdrawing the plea, he should not be able to object to the prosecutor's reviving the other counts." *Id.* at 1306.[10] *See also United States v. Barker*, 681 F.2d 589, 590 (9th Cir.1982) (holding that double jeopardy would not prevent reinstatement of original indictment dismissed as part of a plea bargain later set aside by the district judge); *United States v. Johnson*, 537 F.2d 1170, 1174–75 (4th Cir.1976) (holding that the double jeopardy clause would not prevent trial on counts dimissed as part of a plea bargain subsequently vacated on appeal); *Klobuchir v. Pennsylvania*, 639 F.2d 966, 970 (3d Cir.) (holding that double jeopardy would not prevent trial on first degree murder even though that count had been dismissed as part of a plea bargain later set aside by state trial judge), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981); *Hawk v. Berkemer*, 610 F.2d 445, 448 (6th Cir.1979) (holding that dismissal of certain counts in the indictment "was only conditional on the defendant's guilty plea, a plea the defendant has in effect withdrawn," and thus allowing trial on those counts); *United States v. Anderson*, 514 F.2d 583, 587 (7th Cir.1975) (stating that when the plea bargain conviction was vacated on appeal "the condition precedent to the Government's agreement not to prosecute [on the previously dismissed count] no longer existed," hence double jeopardy did not bar trial on that count); *United States v. Williams*, 534 F.2d 119, 120 (8th Cir.) (same), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976).

As alluded to earlier, there is a feature of the present case that distinguishes it from these authorities. Fransaw entered his guilty plea *after* the jury was empaneled, while in the cited cases the plea bargain was struck before trial. This distinction is important because several cases explicitly assert that jeopardy did not attach to the *dismissed counts* when the court accepted the plea. By contrast, when the jury was empaneled in Fransaw's case, jeopardy attached to the entire indictment.

Several of the cases involving pretrial dismissals rested at least partially on the ground that jeopardy had never attached to the dismissed counts. In *Klobuchir*, the Third Circuit stated that jeopardy did not attach to the greater charge by virtue of Klobuchir's plea to the lesser charge. Thus the state could try him on the greater charge when the plea arrangement foundered. 639 F.2d at 970. In *Barker*, the Ninth Circuit's conclusion that double jeopardy would not bar trial on an originally dismissed charge seems primarily motivated by the fact that Barker had not "stood trial on the first degree murder charge, and thus [had] not been 'in direct peril' of conviction and punishment on that charge." 681 F.2d at 591. *See also United States v. Vaughan*, 715 F.2d 1373, 1377 (9th Cir. 1983) (relying heavily on *Barker* in holding that jeopardy did not attach to conspiracy counts disposed of in a plea of guilty to possession of marihuana); *United States v. Johnson*, 537 F.2d 1170, 1174 (4th Cir.1976) (jeopardy does not attach to dismissed counts in indictment); *Hawk v. Berkemer*, 610 F.2d 445, 448 (6th Cir.1979) (same).[11]

---

**10.** This statement is dictum because the issue was whether the prosecution could add a *new* count after defendant successfully challenged his conviction, rather than whether the prosecution could revive a count to which jeopardy had attached.

**11.** Although the facts of *Ward v. Page*, 424 F.2d 491 (10th Cir.), *cert. denied*, 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed.2d 157 (1970), are materially identical to those here, the case is not directly on point. A state indictment charged Ward with first degree murder. After two days of jury trial, he pleaded guilty to the lesser included offense of first degree manslaughter. In a habeas proceeding eighteen years later, a federal court held that Ward's plea had been involuntary. The state chose to revive the first degree murder charge against him and he was convicted. In a subsequent habeas proceeding, he un-

Although this distinction diminishes the direct application of these authorities here, we discern in the cases a judicial regard for fairness, namely, a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts. This concern for fairness (and for the integrity of the plea bargaining process) is equally compelling when the plea is entered and abandoned after trial begins. Thus the Eighth Circuit in *Williams* assumed for the sake of argument that jeopardy attached to counts dismissed as part of a plea bargain and nevertheless held that the double jeopardy clause did not bar the government from trying defendant on those counts when the plea was set aside on appeal. 534 F.2d at 120–21. *See also United States v. Cruz,* 709 F.2d 111, 113 n. 2 (1st Cir.1983) (noting that in *Williams* "defendant's challenge to the plea waived any double jeopardy objections that might otherwise have arisen"). Similarly, in *Brown v. State,* 367 So.2d 616 (Fla.1979), the Florida Supreme Court held that under federal and state law jeopardy attached to a greater charge abandoned in a plea bargain with Brown. When Brown reneged on his promise to cooperate, a condition of the bargain, the state revived the greater charge and tried him on it. The state supreme court held that double jeopardy was not offended. *Id.* at 621–23.

Moreover, setting aside the question of dismissed charges for the moment, it is well established that the accused may be tried on the *same count* to which he pleaded guilty if he succeeds in withdrawing from the bargain. *Clark v. Blackburn,* 605 F.2d 163 (5th Cir.1979) (plea withdrawn after sentencing); *United States v. Johnson,* 537 F.2d 1170, 1173–74 (4th Cir.

1976) (original plea-based conviction set aside on appeal); *United States v. Williams,* 534 F.2d 119, 120 (8th Cir.) (plea-based conviction set aside after sentencing), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). *See also United States v. Jerry,* 487 F.2d 600, 606 (3d Cir.1973) (double jeopardy not violated by reinstatement of guilty plea after court initially permitted accused to withdraw it). Yet, jeopardy had clearly attached to such counts. Fransaw is correct that jeopardy had attached to the dismissed section 19.02(a)(2) paragraph, but this, therefore, does not distinguish his case from these.

Further, the present relevance of the foregoing principle exemplified by *Clark* is enhanced by the fact that, at least in a functional and practical sense, the indictment here did not allege two different crimes, but rather two different theories of Fransaw's guilt of a single crime, his murder of Boyd by shooting him with a gun on August 31, 1980. It is, to say the least, highly doubtful that the State of Texas has authorized cumulative punishments on both the first and the second paragraphs of an indictment such as this. *Cf. Davis v. Herring,* 800 F.2d 513, 517 (5th Cir.1986) (stating that where cumulative punishments are not authorized neither are successive prosecutions). Fransaw pleaded guilty to the indictment's first paragraph, that predicated on section 19.02(a)(1), alleging that he "intentionally" caused Boyd's death "by shooting ... [Boyd] with a gun." The second paragraph, which as a part of the plea bargain was dismissed when the guilty plea to the first paragraph was accepted, was predicated on section 19.02(a)(2), and differed from the first in alleging that Fransaw's shooting Boyd with a gun was "an

---

successfully argued that this infringed upon his protection against double jeopardy.

*Ward,* though at first blush squarely on point, was decided before *Crist v. Bretz* applied the federal point of jeopardy attachment (jury empanelment) to the states, and the case appeared to assume that jeopardy had never attached to the murder charge. For example, the Tenth Circuit stressed that Ward's plea to manslaughter was not tantamount to an acquittal of the greater offense of murder, as would have been

the case had a jury convicted him of manslaughter. 424 F.2d at 493. The court stated that "the double jeopardy implications reverbrating [*sic*] from a guilty plea and a jury verdict are not identical." *Id. See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2159–61, 57 L.Ed.2d 24 (1978) (pointing out that historically jeopardy did not attach until the jury rendered its verdict, or was charged, or some other imprecise point well after trial commenced).

act clearly dangerous to human life" which Fransaw intended "to cause serious bodily injury to" Boyd. It seems evident that an intention to cause death is necessarily an intention to inflict serious bodily injury, though of course the converse is not true.[12] Likewise, it is difficult to conceive that shooting a person with a gun, with the intent to kill him or to cause him serious bodily injury, and actually causing his death thereby, is anything other than "an act clearly dangerous to human life." [13] Accordingly, in the setting of this case, it would seem that none of the purposes of the double jeopardy clause would be furthered by holding that although, under the above principle enunciated by *Clark* and related cases, double jeopardy does *not* prevent Fransaw's retrial on the first paragraph of the indictment, it nevertheless *does* prevent retrial on the second paragraph.[14]

■ The Supreme Court has stated that "the conclusion that jeopardy has attached begins, rather than ends, the inquiry...." *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973) (referring specifically to declarations of mistrial); *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975) (quoting this passage from *Somerville* ); *see also Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)

("The double-jeopardy provision ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment."). This fact, that the attachment of jeopardy does not end the inquiry, is clearly demonstrated by the familiar rule that the double jeopardy clause "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside." *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969) (citing, *inter alia, United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); footnote omitted).[15]

Several theories have been advanced to rationalize retrial in these circumstances, *see* W. LaFave & J. Israel, 3 *Criminal Procedure* § 24.4 at 85 (1984); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978), but the Supreme Court has described as "the most reasonable justification," *id.,* that articulated for the Court by Justice Harlan in *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964):

"[O]f greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the

---

**12.** Section 1.07(a)(7), Tex.Penal Code Ann., defines "bodily injury" as "physical pain, illness, or any impairment of physical condition"; section 1.07(a)(34) defines "serious bodily injury" as including, among other things, "bodily injury that creates a substantial risk of death or that causes death." *See Rocha v. State,* 648 S.W.2d 298 (Tex.Crim.App.1982).

**13.** *Cf.* Tex.Penal Code Ann. § 1.07(a)(11) ("deadly weapon" includes "a firearm"); *Chavez v. State,* 657 S.W.2d 146 (Tex.Crim.App.1983). *But see Polk v. State,* 693 S.W.2d 391, 395–96 (Tex. Crim.App.1985). This seems to be a far cry from the "small stone" illustration of *Lugo-Lugo v. State,* 650 S.W.2d 72, 81 (Tex.Crim.App.1983).

**14.** Our analysis in this respect is not contrary to *Plunkett v. Estelle,* 709 F.2d 1004 (5th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). In *Plunkett,* we granted habeas relief to a petitioner, who had been convicted under a section 19.02(a)(1) indictment

alleging he "intentionally" caused the victim's death "by striking her with his hands," because the jury charge authorized conviction under a section 19.02(a)(2) theory not alleged in the single-paragraph indictment. We held that this denied Plunkett his due process and Sixth Amendment rights to "basic notice" because he was not "aware he might be convicted not of intentionally killing the child, but of intending to injure her by a blow that caused her death" and the difference between these two "obviously would effect the defensive preparation." *Id.* at 1010. *Plunkett* is thus a notice case, not a double jeopardy case. The two theories are not necessarily coextensive. Here there is no notice problem. Fransaw's December 1981 trial was clearly conducted from its commencement on all paragraphs of the indictment.

**15.** The exception to this rule arises only when the conviction is overturned for insufficiency of evidence. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest."

In brief, when a defendant successfully seeks a reversal of his conviction, society's interest in punishing him, if guilty, outweighs the fact that he will be put in jeopardy again on retrial. *See Hardwick v. Doolittle*, 558 F.2d 292, 297 (5th Cir.1977) (noting that "a no-retrial rule would substantially impair the state's ability to aggressively enforce the criminal law while offering defendants scant additional protection against persecution by prosecution"), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).

Similar reasoning underlies the Supreme Court's sanction of retrials following mistrials requested by defendants or mandated by "manifest necessity," such as a hung jury. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (discussing mistrials requested by defendants); *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 2160 n. 10, 57 L.Ed.2d 24 (1978) (discussing "manifest necessity" mistrials); *e.g., Baker v. Estelle*, 711 F.2d 44, 47 (5th

Cir.1983) (same), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 724, 79 L.Ed.2d 185 (1984). For example, with regard to "manifest necessity" mistrials, the Supreme Court has noted that, were retrial barred, this would be "an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." *Wade*, 69 S.Ct. at 837. In such cases, society's interest in protection from the guilty is greater than the accused's interest in avoiding retrial. *Id.*

■ Fransaw's withdrawal of his guilty plea is analogous to these situations. Like the defendant who abandons the possibility of acquittal in the first proceeding by requesting a mistrial, Fransaw voluntarily surrendered the plea bargain's refuge against prosecution on the section 19.-02(a)(2) paragraph.[16] *Crist v. Bretz* emphasizes that jeopardy attaches when a jury is empaneled because of "the need to protect the interest of the accused in retaining a chosen jury." 98 S.Ct. at 2161. But Fransaw sought out the state after appearing before his chosen jurors and entered an arrangement designed to insulate him from what he feared would be their unfavorable reaction to his case. As noted at the outset, the double jeopardy clause guards against the harassment, embarrassment, expense, and increasing odds of conviction that accompany repeated prosecutions. Here, however, this burden was voluntarily shouldered by Fransaw. In sum, relevant precedent not only fails to require the rule proposed by Fransaw, it clearly points to the opposite conclusion. Therefore, we affirm the district court's refusal to grant Fransaw habeas relief on double jeopardy grounds. Since the United States

---

**16.** Fransaw's withdrawal from the arrangement was triggered by a misunderstanding for which the state judge may be at least partially responsible, though it is impossible to tell this from the record. But there has been no allegation, much less proof, that the disagreement over the length of the term was the consequence of any bad faith by the state (prosecutor or judge). If such bad faith existed, of course, this might be a

different case, depending, perhaps, on the nature of the bad faith and other related circumstances. *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 557 n. 12, 27 L.Ed.2d 543 (1971) (stating that retrial might be barred "where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety designed to avoid an acquittal"); *Dinitz*, 96 S.Ct. at 1081 (same; citing cases).

Constitution did not bar Fransaw's December 1981 trial for murder under sections 19.02(a)(1) and 19.02(a)(2), his first two complaints on appeal are without merit.

### B. Lesser Included Offense

Relying on *Plunkett v. Estelle*, 709 F.2d 1004 (5th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), *see* note 14, *supra*, Fransaw asserts, independent of his double jeopardy argument, that we must vacate his conviction for voluntary manslaughter because voluntary manslaughter was not alleged in his indictment. This argument has no merit.

█ Under Texas law at the time of Fransaw's trial, voluntary manslaughter was, in all cases, a lesser crime included in the offense of murder. *See* text at note 1, *supra*. Although the Texas Court of Criminal Appeals has since narrowed the circumstances under which that is so, *see* note 1, *supra*, this subsequent modification does not alter the fact that when Fransaw was tried, the charge on the greater offense of murder was "sufficient notice to the defendant that he [might] be called to defend the lesser included charge." *Walker v. United States*, 418 F.2d 1116, 1119 (D.C. Cir.1969); *United States v. Whitlock*, 663 F.2d 1094, 1101 (D.C.Cir.1980).

█ This "lesser included offense doctrine" permits the court to charge the jury on a lesser unindicted offense where that offense is complete upon commission of "some of the elements of the crime charged." *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956). The doctrine "developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged." *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). As the doctrine now stands, defendants also frequently invoke it. *Id.*

The Supreme Court has discussed the lesser included offense doctrine on numerous occasions without suggesting that it is in any way inconsistent with the constitutional requirement that defendant be put on notice of the charges against him. *E.g., Berra; Keeble; Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). Our cases likewise discuss the lesser included offense doctrine without questioning its constitutionality. *E.g., United States v. Williams*, 775 F.2d 1295, 1302 (5th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1477, 89 L.Ed.2d 732 (1986); *Alexander v. McCotter*, 775 F.2d 595, 599–601 (5th Cir.1985); *Bell v. Watkins*, 692 F.2d 999 (5th Cir. 1982), *cert. denied*, 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). In short, the doctrine is on sound constitutional footing and is available to the government as well as to defendants. C. Wright, 2 *Federal Practice & Procedure (Criminal)* § 498 at 800 (1982).

### Conclusion

For the reasons stated, we affirm the district court's denial of Fransaw's habeas petition.

AFFIRMED.