863 F.2d 50
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome Felix JECHURA, Defendant-Appellant.
 No. 87-1978.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1988.
 
 Before LIVELY, RYAN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Jerome Jechura, appeals from the district court's denial of his motion to dismiss the indictment on double jeopardy grounds. The indictment charged three counts of filing false claims with the United States, in violation of 18 U.S.C. Sec. 287. Jechura also appeals the district court's refusal to give a requested instruction on good faith reliance on directions given him by government officials.
 
 
 2
 The three counts of the indictment were based upon three claims for progress payments submitted by Jechura, on two Department of Defense contracts. All of the requests were supported by documents which purported to be purchase orders from Jechura's company, corresponding invoices from suppliers, and checks to the suppliers from Jechura's company. The supporting documents, however, were fabricated--the purchase orders were either false or not yet filled, the invoices had been created from other invoices on unrelated contracts, and the checks had never been issued. A large number of documents were altered for this purpose by Jechura and his secretary. By paying the claims prematurely, the government sustained a loss of approximately $64,000 in interest.
 
 
 3
 Jechura testified in his defense that he relied upon certain government officials in submitting the requests in an altered form. Because he received a negative pre-award survey concerning his company's physical and financial capability to finish the job, Jechura testified that he contacted the procurement contract officer to protest. According to Jechura, the officer assured him that, if he would purchase certain materials which the government had repossessed from another winch contractor, a contract would be awarded to him. Jechura testified that he and the officer agreed that Jechura would pledge his preexisting inventory to the contract to receive progress payments, which could be used to purchase the materials. Jechura said he contacted the contract administrator for instructions on filling out the progress payment request forms, and the administrator told him to show preexisting inventory as paid costs, to attach the old invoices for the inventory, and to prepare checks as proof of payment, although the checks would not be issued or paid.
 
 
 4
 Jechura was charged on July 9, 1985, with three counts of filing false claims against the United States, and trial commenced on December 16, 1985. During a recess in this trial, the district judge made statements which led defense counsel to believe the court would sentence defendant to probation and a $2,500 fine if he would plead guilty. The plea agreement, however, provided for a maximum of two years' imprisonment and a $2,500 fine, and both Jechura and his counsel acknowledged this before the court. After Jechura pleaded guilty and was before the judge for sentencing, it became apparent that there was a misunderstanding concerning whether the district court had committed itself to a probationary sentence. The district court allowed Jechura to withdraw his guilty plea and the case was subsequently assigned to another district judge. A second trial commenced on June 16, 1987. The jury found Jechura guilty of all three counts, and the district court imposed a sentence of three years' imprisonment, followed by three years' probation, restitution of $65,068, and $30,000 in fines.
 
 
 5
 Jechura contends that his right to be protected from double jeopardy was violated when he was forced to withdraw his guilty plea and a second trial ensued. He argues that the district court's failure to honor the alleged plea agreement without a finding of manifest necessity put him in jeopardy once and that a successive prosecution was therefore barred.
 
 
 6
 The Fifth Amendment to the United States Constitution provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." Although the Double Jeopardy Clause has been interpreted to unequivocally prohibit a second trial following an acquittal, its application is by no means routine in other contexts. See United States v. DiFrancesco, 449 U.S. 117 (1980). For example, the Supreme Court has concluded that a defendant may be tried again for the same crime, where his conviction was overturned in collateral proceedings on the ground that his guilty plea was not voluntary, but was instead induced in part by comments of the trial judge. United States v. Tateo, 377 U.S. 463 (1964). In Tateo, the defendant was persuaded to plead guilty by the judge's remark to defense counsel that if Tateo were found guilty by the jury he would impose the maximum punishment. The conviction was overturned at a later proceeding on the ground that the plea was involuntary because of the judge's threats, and Tateo was subsequently retried on the same charges. We believe that the Supreme Court's reasoning in its opinion in Tateo is dispositive of this case.
 
 
 7
 Jechura's withdrawal of his guilty plea was occasioned by what he perceives as "judicial overreaching," the breach of a plea agreement that he would receive a probationary sentence. Even if one overlooks the fact that Jechura's purported understanding is contrary with what both he and his counsel acknowledged the plea agreement to provide, the alleged judicial conduct Jechura relies upon here places him in no better situation than was Mr. Tateo, who was the victim of threatening conduct by his judge. Nor does it help Jechura that he withdrew his guilty plea while Tateo had his overturned on collateral attack. Just as "it would be incongruous to compel greater relief for one who proceeds collaterally than for one whose rights are vindicated on direct review," Tateo, 377 U.S. at 466, it would be illogical to afford greater protection where the district court allows withdrawal before a final judgment than where withdrawal is permitted on appeal. In addition, it should be observed that pronouncement of sentence has not been accorded the qualities of constitutional finality that attend an acquittal. DiFrancesco, 449 U.S. at 133-34.
 
 
 8
 We note that our conclusion in this regard is consistent with the Fifth Circuit's recent opinion in Franshaw v. Lynaugh, 810 F.2d 518 (5th Cir.), cert. denied, 107 S.Ct. 3237 (1987).
 
 
 9
 Jechura also contends that the district court erred in rejecting a requested instruction. The proffered instruction concerned a defense of good faith reliance upon directions given by government officials. The requested instruction read as follows:
 
 
 10
 The defendant claims that he is not guilty of wrong-doing, in part, because he acted at the direction of government officials who had authority to give him directions.
 
 
 11
 If the defendant before taking any action sought the direction of government officials whom he, in good faith, considered to have appropriate authority and he acted in accordance with his good faith understanding of the directions of these government officials, then the defendant would not be doing wrong in doing what the law forbids, as that term is used in these instructions.
 
 
 12
 Whether the defendant acted in good faith in seeking directions and whether he acted in good faith in accordance with the directions received, are questions for you to determine.
 
 
 13
 Although the district court refused to give the instruction, the jury was instructed that, as an element of the offense charged, the government was required to prove that Jechura knew that the claim he presented to the United States was false, fictitious, or fraudulent. The court advised the jury that an act is done "knowingly if it's done voluntarily and intentionally, and not because of mistake, an accident, or other innocent reasons." Thus, in order to find Jechura guilty, the jury was required to find that he had voluntarily and intentionally presented a false claim for payment. Because such a finding necessarily excludes the existence of good faith reliance, it was not error for the district court to decline the proffered instruction, since the one given by the district court adequately encompassed Jechura's theory of defense. See, e.g., United States v. Chenault, 844 F.2d 1124, 1130-31 (5th Cir.1988).
 
 
 14
 Moreover, an additional ground supports the refusal to give the instruction. Although the proffered instruction sets out what is essentially an estoppel theory, it fails to clearly include the element of justifiable reliance. Jechura's estoppel theory finds its origin in United States v. Barker, 546 F.2d 940 (D.C.Cir.1976). In Barker, two of the "foot soldiers" who broke into the office of Daniel Ellsberg's psychiatrist were tried for their part in the Watergate affair. The defendants claimed their good faith reliance on the authority of E. Howard Hunt to order the entry to obtain national security information as a defense. Barker, in allowing the defendants to state a good faith reliance defense, took pains to instruct that "[h]is mistake should avail him only if it is objectively reasonable under the circumstances." Barker, 546 F.2d at 947-48 (opinion per Wilkey, J.).
 
 
 15
 Accordingly, even if the facts in this case could be said to support the giving of such an instruction, and we were to accept the validity of such a theory of defense, the proffered instruction does not accurately state the essentials of the theory, since the element of justifiable reliance is conspicuously absent.
 
 
 16
 The other issues raised by defendant being without merit, the judgment of the district court is affirmed.