# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40504

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

EZELL BROWN, JR.,

       Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC 4:12-CR-87-1

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

In this interlocutory criminal appeal, Defendant-Appellant Ezell Brown, Jr., challenges the district court's denial of his motion to dismiss the indictment on double jeopardy grounds. After carefully reviewing the record, the parties' respective briefs, and relevant precedent, we agree with the district court and therefore affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40504

Brown was a loan officer and the owner of Uniq Financial Services, which is a loan correspondent approved by United States Department of Housing and Urban Development ("HUD") to originate FHA-insured loans.  In connection with these business dealings, Brown was charged by a federal grand jury in the United States District Court for the Eastern District of Texas with three counts of making false entries to federal credit institutions (Counts 1-3) and one count of conspiracy to commit bank fraud (Count 4).  Brown pleaded not guilty, and the case proceeded to a jury trial.  However, before the jury was empaneled, the Government dismissed Counts 1 and 4.  On the fourth day of trial, the Government called HUD Special Agent Brandon Gardner to testify, who the Government had planned to be its final witness before resting its case.  When the Government asked Gardner to refer to a loan document in order to identify the location where the closing had occurred, Brown's attorney objected that the testimony lacked foundation because the loan document had not been admitted as evidence of the truth of the matters contained therein.  When the district court inquired why the closing location had any relevance to the proceedings, Brown's attorney argued that the Government had not yet proven that venue was proper in the Eastern District of Texas.

After a lengthy discussion between the parties and the district court, the district court advised the Government that Gardner could not "base his testimony establishing venue in this case on a document that was not offered or accepted into evidence to prove the truth of what's in the document."  The district court then took a recess, during which the parties conferred and confected a plea agreement whereby Brown would plead guilty to Count 2 and Count 3 would be dismissed.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed, *inter alia*, that Brown would serve a term of imprisonment of one day followed by a three-year term of supervised release. Relevant here, the plea agreement also provided that Brown would be given

2

the opportunity to withdraw his plea if the district court did not accept the terms of the agreement.

At the outset of the plea hearing, the district court advised the parties that its acceptance of the plea agreement would be contingent upon the content of the presentence report ("PSR") and "if the presentence report shows that there were significant losses to the Government and to the taxpayers as a result of Mr. Brown's conduct either through the count of conviction or relevant conduct . . . then there is more than a small possibility that I will not approve [the agreement]." The district court further advised the parties: "I'm not going to approve a punishment that is disproportionate to the crime. . . . Of course, if I don't approve of the 11(c)(1)(C) plea agreement, then he can withdraw his plea later."

Ultimately, after reviewing the PSR, the district court rejected the plea agreement. Observing that Brown's conduct had caused over $500,000 in losses and that his guidelines range was 57-71 months of imprisonment, the district court concluded that the one-day prison sentence contemplated by the plea agreement was "nowhere near commensurate with what Mr. Brown did as far as the evidence that I heard at trial." Following the district court's rejection of the agreement, Brown withdrew his plea.

After the Government elected to retry Brown, Brown filed a motion to dismiss on double jeopardy grounds. Relying upon a supporting declaration of his trial attorney, Brown argued that (1) if the initial trial had proceeded, the district court would have been "required to direct a verdict against the government" given the lack of evidence establishing venue; (2) during an off-the-record conversation between counsel, counsel for the Government "assured Mr. Brown's counsel 'not to worry' because, if the Court did decide to reject the plea, 'it would likely work to Mr. Brown's benefit'"; and (3) Brown's counsel assumed that this assurance from the Government meant that, if the district

court rejected the plea agreement, the Government would dismiss its case against Brown "with or without pretrial diversion." In the alternative, Brown argued that the district court abused its discretion by dismissing the jury without "manifest necessity" because, in Brown's view, the district court instead could have ordered an expedited PSR and retained the jury until the court determined whether to accept the plea agreement or not.

In a written order, the district court denied Brown's motion to dismiss. Citing our precedent in *Fransaw v. Lynaugh*, 810 F.2d 518 (5th Cir. 1987), the district court concluded that the Double Jeopardy Clause did not preclude the Government from retrying Brown after he withdrew his plea. The district court noted that the trial had ended because Brown "abandoned the possibility of acquittal" and voluntarily entered into the plea agreement with the Government. As for Brown's contention that he assumed the Government would not retry him if the agreement were not accepted, the district court observed that, "[r]egardless of whether the Defendant or his counsel were under the impression that the Government would take some action other than retrying this case," Brown affirmatively denied that his guilty plea was based upon any promises other than those contained in the plea agreement. Finally, with respect to Brown's argument that the district court should have retained the jury and ordered an expedited PSR, the district court noted that neither party had objected to the jury's dismissal.

On appeal, Brown resurrects the same arguments presented to and rejected by the district court. We first address his argument that the Double Jeopardy Clause bars the Government from retrying him. As the district court correctly observed, our court in *Fransaw* held that the Double Jeopardy Clause did not preclude the Government from retrying a defendant on both the same count contained in a plea agreement *and* the count dismissed by the plea agreement where the defendant later withdrew his plea. 810 F.2d at 524-29.

4

Similar to the instant case, the defendant in *Fransaw* entered into a plea agreement with the Government after his criminal trial had commenced, but he later withdrew his plea when he discovered that the trial judge would sentence him higher than what he had anticipated. In holding that retrial did not constitute double jeopardy, we observed that "a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts. This concern for fairness (and for the integrity of the plea bargaining process) is equally compelling when the plea is entered and abandoned after trial begins." *Id.* at 526. To further buttress this conclusion, we analogized to those Supreme Court cases sanctioning "retrials following mistrials requested by defendants or mandated by 'manifest necessity,' such as a hung jury." *Id.* at 528. As we explained, "[l]ike the defendant who abandons the possibility of acquittal in the first proceeding by requesting a mistrial, Fransaw voluntarily surrendered the plea bargain's refuge against prosecution[.]" *Id.* at 528. So, too, in Brown's case.

Brown's attempt to distinguish his case from *Fransaw* rests on the fatally flawed premise that it was a foregone conclusion that the district court would have been forced to enter a directed verdict against the Government due to lack of evidence establishing venue. Contrary to Brown's argument, the record does not indisputably prove that the district court would have been required to acquit Brown of the charges at the end of the Government's case. Although the Government had intended Agent Gardner to be its last witness, it could have revised its plan and called an additional witness in order to establish venue. Indeed, according to the Government, it could have had a custodian from the title company arrive in "an hour or so" in order to testify about venue. In other words, at the time the parties conferred to discuss a plea, the Government had not yet rested its case and potentially could have established venue via other avenues. Our conclusion in this regard is further

buttressed by an illuminating inconsistency in Brown's central argument: if the underlying record here so clearly would have compelled acquittal as Brown maintains, then it is highly suspect that Brown and his counsel nevertheless would have entered into a plea agreement resulting in a conviction, heavy fine, and restitution.  In sum, Brown has failed to persuade us that his case is so materially distinguishable from *Fransaw* that we should not follow that long-established precedent in his case.  Accordingly, we agree with the district court that double jeopardy does not bar his retrial.

Finally, we likewise reject Brown's argument that the district court abused its discretion "in declaring a mistrial without 'manifest necessity.'"  As an initial matter, the district court here did not declare a "mistrial."  Rather, by voluntarily accepting a plea agreement with the Government, it was the actions of Brown himself that ended the proceeding.  Moreover, as the district court accurately noted, Brown never objected below to the jury's dismissal.  We therefore discern no reversible error in the district court's decision to dismiss the jury after Brown announced his intention to enter into a plea agreement with the Government.

For these reasons, the district court's order denying Brown's motion to dismiss is AFFIRMED.