John Wesley RIADON, Jr., Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 13777.

United States Court of Appeals
Sixth Circuit.

Feb. 1, 1960.

Dale M. Quillen, Nashville, Tenn., for appellant.

Warner Hodges, Asst. U. S. Atty., Memphis, Tenn. (Rives Manker, U. S. Atty., and Malcolm R. Wilkey, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McALLISTER, Chief Judge, and SIMONS and CECIL, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was convicted in the Western District of Tennessee, at Memphis, Tennessee, on May 12, 1959, for possessing and transferring counterfeit currency of the United States, in violation of Title 18 U.S.C., §§ 472 and 473. He seeks reversal here on two main grounds: (1) That having waived a jury trial, his motion to withdraw the waiver was erroneously overruled by the District Court and (2) Because his plea of guilty in another case pending in Nashville, Tennessee, in the Middle District of Tennessee, had previously put him in jeopardy, so that when he was tried and convicted in Memphis the judgment and commitment were void because prohibited by the Fifth Amendment of the Constitution, in that it constituted "double jeopardy".

To understand the appellant's contentions, it becomes necessary to closely consider the sequence of events and the specific charges in the indictments severally returned by the Grand Jury in the respective districts of Tennessee.

A Secret Service Agent, posing as an ex-convict, made contact with the appellant, on May 12, 1958, for the delivery to him, in Memphis, of $2,500.00 in counterfeit notes. The delivery was made on May 12, 1958 in the Western District of Tennessee and an arrangement made that an additional amount of counterfeit currency was to be transferred to the Agent in Nashville. This was done in the early morning of May 14th when counterfeit currency in face value of $76,000.00 was transferred to the Agent in Nashville in the Middle District of Tennessee. The appellant was then arrested. He was indicted in Nashville for making counterfeit bills and for their possession and passing on or about May 14, 1958. On August 26, 1958, an indictment covering the Memphis transfer was returned; the appellant was arrested on September 3d, pleaded "not guilty" and waived a jury trial, on September 4. On October 16 he pleaded "guilty" to an indictment covering the Nashville transaction and the plea was accepted but judgment was at that time reserved. On November 10, 1958, the appellant moved to withdraw his waiver of trial by jury in the Memphis case which was denied. The trial to the Court was commenced on November 13, 1958, the appellant found "guilty" on four counts of possession and sentenced to fifteen years on each count, all of them to run concurrently, and on four counts of transferring, each carrying ten years concurrently. At the argument on the appeal, all challenge in the present case appears to have been waived except the two attacks thereon, above cited, and the questions here involve the issues as to whether he should have been permitted to withdraw his waiver of trial by jury, and whether his trial offended against the double jeopardy provision of the Constitutional Amendment and we have to consider the contention of the appellant that he had been previously put in jeopardy by his plea of "guilty" to the indictment in Nashville, and that the Court erred in overruling his motion to set aside his waiver of trial by jury.

Generally, it is held that jeopardy attaches when a person is placed on trial on a valid indictment before a court of competent jurisdiction, has been arraigned and pleaded and the jury impaneled and sworn. The Government contends that no former jeopardy at-

taches to his plea of guilty and relies entirely upon United States v. Scarlata, 3 Cir., 214 F.2d 807, 809, for the proposition that a plea of guilty, standing by itself, does not put the defendant in jeopardy. But the Scarlata case was decided upon the authority of Title 18 U.S.C. § 659, which provides: "A judgment of conviction or acquittal, on the merits under the laws of any State shall be a bar to any prosecution under this section for the same act or acts", the Court observing: "It may well be that a plea of guilty is a conviction in the same sense in which a jury verdict is a conviction, * * * but a plea of guilty is not a judgment of conviction. Indeed, the very word 'judgment' indicates action by the court. A judgment of conviction by the court must follow a plea of guilty just as a judgment of conviction must follow a jury verdict of guilty * * *. In short, something more than a plea of guilty—some action by the court—is necessary before there can be a judgment of conviction. There was no such action by the state court prior to the federal conviction and sentence and, therefore, there was no bar to the federal prosecution."

■■ Thus it will be clear that the Court in Scarlata, supra, followed the express mandate of Title 18, § 659, and it will also be clear that Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (the Mail Bag Case) also followed the Postal Law, 18 U.S.C.A. § 1706, as by it interpreted even though to an opposite result, and the case bears also on another aspect of the problem to be likewise considered. In spite of the clear wording of the jeopardy prohibition of the Fifth Amendment, no case has been cited to us, and none has been found upon independent investigation, that specifically holds that a plea of guilty does, or does not per se, put an accused person in jeopardy, nor is there any statutory provision in the law against counterfeiting that creates a limitation upon the defense of double jeopardy, or broadens its application. There is, however, the inescapable requirement that the two indictments, or trials, must be for the same

offense to create the status of double jeopardy. The rationalization applied in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, would indicate the unsoundness of the government's position that there was no jeopardy in the Nashville case, in view of the statement therein at page 188 of 355 U.S., at page 224 of 78 S.Ct. that "Moreover it is not even essential that a verdict of guilty or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge." It is our view that a plea of guilty puts the accused in jeopardy, and even though the plea be withdrawn, or its acceptance refused by the trial judge, so long as it is permitted to stand, there is jeopardy, and the cases which hold that jeopardy charge had attached at the first trial by reasoning that jeopardy did not come to an end until the accused was acquitted or his conviction became final, are cited in the note to Green v. United States, supra, 355 U.S. at page 189, 78 S.Ct. at page 224. We are, therefore, unable to sustain the position of the government that no jeopardy resulted from the plea of guilty in the Nashville case.

■ Be that as it may, it is an inescapable element to sustain a defense of double jeopardy that the two cases must involve the same offense: "The recognized test for determining the identity or separateness of offenses charged in two indictments is whether or not the same proof will sustain a conviction under both, or whether one requires proof of facts not required by the other." Bacom v. Sullivan, 5 Cir., 200 F.2d 70, 71, certiorari denied, 345 U.S. 910, 73 S.Ct. 651, 97 L.Ed. 1345. The Memphis indictment does not charge making, or forging, nor were the acts of possessing and passing of counterfeit bills either on the same day or at the same place. In that respect, the present case differs from Smith v. United States, 6 Cir., 211 F.2d 957; Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, overruling, 6 Cir., 213 F.2d 629 and Rayborn v. United States, 6 Cir., 234 F.2d 368. The only

common denominators in the present case were that the transfer in each instance was made to the same Secret Service Agent and that the notes were probably printed from the same plate. They were, however, undoubtedly different notes and the plea of guilty in Nashville pertained not only to their manufacture but to the passing and possession of a quantity far in excess of the number involved in the Memphis trial. The transactions had similarity but were not identical.

It would be an unwelcome result and do great injury to the public interest if it were made possible in the application of the double jeopardy provision of the Fifth Amendment for a counterfeiter to plead guilty of possession or transfer of one, or a small number of illicit securities, and thereby secure immunity from prosecution in a subsequent passing or possession of an unlimited number of counterfeited obligations of the United States. This would indeed be what Mr. Justice Black in a different setting in Wade v. Hunter, 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974, denominated as "the mechanical application of an abstract formula".

■■ There remains the other question in the case as to whether the Court erred in denying the appellant's motion to withdraw his waiver of a jury trial. It is true that the courts are very alert to preserve the right of an accused to a trial by a constitutional jury but before any waiver can become effective the consent of government counsel and the sanction of the court must be had in addition to the express and intelligent consent of the defendant. Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854. In the present case, the waiver of a jury trial was made in open court, in a stipulation signed by the appellant, his attorney, and the Assistant United States Attorney. There can be no doubt that the waiver was an effective one, intelligently made. The appellant, at all times, had the service of counsel, was fully able to comprehend the charges against him and the gravity of the offenses. Bergen v. United States, 8 Cir., 145 F.2d 181, at page 187. There is nothing in the record showing that appellant did not understand the nature of the charges against him. In Leonard v. United States, 5 Cir., 231 F.2d 588, the accused did not have counsel and thought the Court would merely make an administrative decision to assign him to military service as a conscientious objector. These circumstances were not here presented to the Court. There was no abuse of discretion in denying the motion.

Affirmed.