Dennis SAMPSON, Petitioner
and Appellant,

v.

STATE of North Dakota, Respondent
and Appellee.

Cr. No. 910093.

Supreme Court of North Dakota.

Dec. 9, 1991.

Fleming, DuBois & Trenbeath, Cavalier, for petitioner and appellant; argued by Lawrence D. DuBois.

Lisa Beckstrom Gibbens (argued), States Atty., Cando, for respondent and appellee.

MESCHKE, Justice.

Dennis Sampson appeals from a denial of post-conviction relief, arguing that his 1989 negligent-homicide conviction violated his constitutional rights against double jeopardy, and that he was deprived of effective assistance of counsel. We conclude that jeopardy attached when Sampson pleaded guilty to negligent homicide before misdemeanor convictions, and that those convictions were not for the same conduct. Therefore, we affirm.

In the early hours of September 18, 1988, the police stopped Dennis Sampson in Cavalier County after they saw his car swerve sharply several times. The police believed

that Sampson was intoxicated but, unexpectedly, Sampson jumped back into his car, restarted it, and drove away. The police chased Sampson at high speeds for sixty miles into Towner County where Sampson's car left the road, overturned, and killed his passenger.

Sampson was arrested and charged with manslaughter in Towner County. Later, he was separately charged in Cavalier County with fleeing an officer, driving under the influence, and escape. In Towner County on February 3, 1989, Sampson pleaded guilty to a reduced charge of negligent homicide. The trial court accepted his plea, but delayed sentencing pending a presentence report.

On March 21, 1989, Sampson was returned to Cavalier County where the escape charge was dropped, and he pleaded guilty to the crimes of driving under the influence and of fleeing an officer. Sampson was sentenced to two 30–day, concurrent sentences for those misdemeanors. Sampson was taken back to Towner County on March 27, 1989, and sentenced to five years imprisonment for negligent homicide.

Nearly a year later, Sampson complained to the Towner County District Court, raising double jeopardy questions. The court appointed counsel to assist Sampson in seeking post-conviction relief. After some procedural delays, Sampson petitioned to set aside his negligent-homicide conviction as violative of constitutional guarantees against double jeopardy. Sampson contended that his sentence in Towner County for negligent homicide was for the same conduct that he had been convicted and sentenced for already in Cavalier County. The court denied relief, reasoning that jeopardy attaches when a guilty plea is accepted, rather than at sentencing, and that Sampson's homicide conviction did not require proof of the same conduct or elements as the two misdemeanor convictions. Sampson appeals.

On appeal, Sampson continues to argue that his homicide conviction violated his constitutional rights against double jeopardy, and that he did not receive effective assistance of counsel because he was not advised of a possible double-jeopardy defense. Sampson largely grounds his arguments on *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a recent holding that the Double Jeopardy Clause bars a prosecution if, to prove an essential element of the crime, the government will prove conduct for which the defendant has already been prosecuted. Sampson says that jeopardy attached first when he was sentenced on the Cavalier County misdemeanors. Sampson argues that his conviction for homicide in Towner County also required proof of the same conduct that the misdemeanor convictions in Cavalier County did. Therefore, Sampson says, double jeopardy barred his more serious conviction for homicide.

■ First, we consider whether jeopardy attaches upon the plea of guilty or upon sentencing thereafter. In a related context, we said that jeopardy attaches in criminal proceedings when the defendant's trial commences. *State v. Jensen*, 333 N.W.2d 686, 691 (N.D.1983). In a jury trial, jeopardy attaches when the jury is empaneled and sworn; in a trial without a jury, when the court begins to hear the evidence. *Id.* We have not before considered when jeopardy attaches for a conviction without a trial.

Sampson asks us to consider the effect of several United States Supreme Court cases. In *Ohio v. Johnson*, 467 U.S. 493, 501, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984), the Court recognized that when a defendant is tried and acquitted or convicted of a lesser included offense, double jeopardy bars prosecution for the greater offense. Based on this recognition and on the *Grady* analysis, Sampson asks us to conclude that he was convicted and sentenced for homicide based on the same conduct that he had been already convicted and sentenced for, the misdemeanors in Cavalier County.

In *Ricketts v. Adamson*, 483 U.S. 1, 8, 107 S.Ct. 2680, 2685, 97 L.Ed.2d 1 (1987), the Court assumed that "jeopardy attached at least when respondent was sentenced" after acceptance of the plea to a reduced charge of second-degree murder. But

*Ricketts* furnishes little guidance because it held that the respondent's breach of a plea arrangement removed any double-jeopardy bar to reinstatement and trial of the initial charge of first-degree murder.

For his argument that jeopardy did not attach upon his plea of guilty, Sampson cites NDRCrimP 32(d)(3) as allowing withdrawal of a guilty plea before sentencing. Therefore, Sampson says, jeopardy did not attach in either county until he could no longer withdraw his guilty plea after he was sentenced in Cavalier County.

■ The State argues that, when Sampson earlier entered an unconditional plea of guilty in Towner County, jeopardy attached when the trial court accepted his plea. We agree. NDRCrimP 32(d) allows a defendant to withdraw a plea of guilty only to correct a manifest injustice. Otherwise, "a defendant may not withdraw a plea of guilty as a matter of right once the plea has been accepted by the court." NDRCrimP 32(d)(3). Although withdrawal of a plea is allowed for a fair and just reason absent substantial prejudice to the prosecution, there is no unrestricted right to withdraw a guilty plea after it is accepted. *See State v. Millner,* 409 N.W.2d 642 (N.D.1987). In contrast, a defendant has an unrestricted right to withdraw the plea when a sentencing court does not accept a plea agreement. NDRCrimP 11(d)(3). Therefore, we conclude that Sampson's jeopardy first attached when the court accepted his unconditional plea of guilty to negligent homicide, not when the court later sentenced him.

Our conclusion follows a number of precedents. *Fransaw v. Lynaugh,* 810 F.2d 518, 523 (5th Cir.1987) (The general rule is that jeopardy attaches with the unconditional acceptance of a guilty plea.); *United States v. Bullock,* 579 F.2d 1116, 1118 (8th Cir.1978) (Jeopardy attaches when a plea of guilty is accepted.); *United States v. Smith,* 912 F.2d 322, 324 (9th Cir.1990) (Jeopardy ordinarily attaches upon acceptance of a plea agreement). Accordingly, Sampson's jeopardy attached on February 3, 1989 when the trial court accepted his plea of guilty to homicide, weeks before March 21, 1989 when he pleaded guilty to the misdemeanors. The homicide conviction, being first, was not barred by double jeopardy.

■ Even if, for the sake of argument, we assume that jeopardy attached first for the misdemeanors, the homicide conviction did not require proof of the same essential conduct as the misdemeanors, and so could not be barred, either. Under the *Grady* analysis, Sampson argues, his initial jeopardy for vehicular misdemeanors would bar his subsequent prosecution for vehicular homicide because the homicide required proof of the same essential conduct as did the misdemeanors. We recently indicated our rejection of a similar argument in *State v. Robideaux,* 475 N.W.2d 915 (N.D.1991). The argument is no more persuasive here.

The North Dakota Constitution, Art. I, Sec. 12, declares, "[n]o person shall be twice put in jeopardy for the same offense...." The Double Jeopardy Clause of the Bill of Rights says, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The latter clause includes three protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). This case considers the perils of multiple prosecutions for the same offense. The questions are whether the separate prosecutions are for the same or a different offense, or for the same or different conduct.

*Grady v. Corbin* goes beyond the traditional analysis for double jeopardy developed in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), reasoning that it "does not protect defendants sufficiently from the burdens of multiple trials." 110 S.Ct. at 2093. Under *Grady,* a second prosecution must first undergo *Blockburger* scrutiny, whether the subsequently charged offense has an element that requires proof of an offense

already prosecuted, or is a lesser included offense of one already prosecuted. If double jeopardy is not implicated under the *Blockburger* analysis, *Grady* adds another degree of scrutiny, whether the second prosecution requires proof of *conduct* for which the defendant has already been prosecuted. According to *Grady*, if the charge requires proof of the same conduct for which the defendant has already been convicted or acquitted, double jeopardy would bar the second prosecution.

We scrutinize Sampson's convictions under the successive analyses of *Blockburger* and *Grady*. First, we determine whether each offense has identical statutory elements or whether one of the offenses charged is a lesser included offense of the other. *Blockburger*. In Cavalier County, Sampson was convicted of driving under the influence, and with fleeing a police officer. The relevant part of NDCC 39–08–01 says a "person may not drive ... if ... [t]hat person is under the influence of intoxicating liquor." The relevant part of NDCC 39–10–71 says that "[a]ny driver of a motor vehicle who ... flees or attempts to elude ... a pursuing police vehicle ... when given a visual or audible signal ... to stop" is guilty of a crime. In Towner County, Sampson was convicted of negligent homicide "while operating his automobile ... in a reckless manner at a speed likely to endanger another person." Under NDCC 12.1–16–03, "[a] person is guilty of a class C felony if he negligently causes the death of another human being." None of these three offenses, as charged, has identical statutory elements. As charged, none is a lesser included offense of the other. This satisfies the *Blockburger* scrutiny.

The *Grady* "same conduct" analysis goes further and requires us to determine whether the state must prove conduct that constitutes an offense for which the defendant has already been prosecuted. Sampson argues that to prove the negligence element of this homicide, the prosecution had to prove again the same conduct of driving under the influence and of fleeing. We disagree.

While these crimes all occurred during the same course of events, the convictions were not for the same conduct. The conduct charged for this homicide was driving negligently at a speed likely to endanger another person, causing the car to leave the road and overturn, and causing the death of the passenger. It was not *necessary* for the prosecution to prove that Sampson was intoxicated or that the reason for his speed was because he was fleeing from law officers. Thus, Sampson was convicted of negligent homicide for speeding, without using the conduct of driving under the influence or of fleeing from officers.

█ Rather, Sampson's argument seems to be a variation of a "same evidence" construct. We recognize that Sampson was charged with several offenses that occurred during one series of events, so that some of the same evidence would be used in proving each separate offense. But neither a common episode nor the same evidence determines double jeopardy. A "same evidence" test was expressly disclaimed in *Grady*. 110 S.Ct. at 2093. "The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id. Grady* went on to say that the presentation of specific evidence in one trial does not prevent the government from introducing that same evidence in a subsequent proceeding. *Id.* We have said before that *Grady* does not mandate an "actual evidence" or a "same evidence" test. *Robideaux*, 475 N.W.2d at 917. We hold, therefore, that Double Jeopardy does not bar successive prosecution of separate charges that occur during a series of events when the separate charges do not require evidence of the same essential conduct.

█ Sampson also argues that he was deprived of effective assistance of counsel because his counsel did not satisfactorily advise him about double jeopardy, and failed to raise a double jeopardy defense. Sampson testified that he questioned his attorney about double jeopardy and was told that it didn't apply. As it turns out,

Sampson was correctly advised because double jeopardy does not apply.

Sampson recognizes that the United States Supreme Court had not yet decided *Grady* when he was prosecuted, but argues that his counsel should have looked to the decision of the New York appellate court in the *Grady* case, which barred prosecution of vehicular manslaughter because the defendant had already been convicted of traffic offenses for the same conduct that was used to prove the manslaughter charge. *See Corbin v. Hillery,* 74 N.Y.2d 279, 545 N.Y.S.2d 71, 543 N.E.2d 714 (1989). Sampson also cites the United States Supreme Court decision in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), that presaged *Grady* by analyzing, for double jeopardy review, a vehicular manslaughter charge in the light of a prior conviction of failing to reduce speed to avoid the accident. Sampson argues that his circumstances were so parallel to the *Corbin* and *Vitale* situations that they should have prompted his attorney to raise double jeopardy as a defense or, at least, to request a bill of particulars in the homicide prosecution.

■ A defendant's claim of ineffective assistance by counsel must be supported by facts that show that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). The defendant must demonstrate that the attorney's performance was not " 'within the range of competence demanded of attorneys in criminal cases.' " *Id.* at 687, 104 S.Ct. at 2064. (Citation omitted). The defendant needs to overcome a strong presumption that his counsel performed within that wide range of reasonableness. *Id.* at 689, 104 S.Ct. at 2065. In this post-conviction proceeding, Sampson's trial counsel did not testify, and was not called on to explain his strategy or tactics. "Without a record scrutinizing the reasons underlying counsel's conduct, adjudging it subpar is virtually impossible." *State v. Denney,* 417 N.W.2d 181, 182–83

(N.D.1987). At this stage and without that explanation, counsel's defense efforts could only be adjudged ineffective if Sampson had actually been placed in double jeopardy. We have concluded that he was not.

Sampson was originally charged in Towner County with manslaughter, a class B felony, with a maximum sentence of ten years. His attorney negotiated a plea agreement with the prosecuting attorney, reducing his exposure to negligent homicide, a class C felony, with a maximum sentence of five years. Sampson has proffered no other evidence to overcome the presumption that his attorney's performance was reasonable. We affirm the trial court's determination that Sampson received effective assistance of counsel.

We affirm the judgment denying postconviction relief.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

Justice H.F. GIERKE, a member of the court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.