**Dennis SAMPSON, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

Civ. No. 930056.

Supreme Court of North Dakota.

Sept. 29, 1993.

Dennis Sampson, pro se.

Gordon A. Dexheimer (argued), State's Atty., Towner, for respondent and .appellee.

LEVINE, Justice.

Dennis C. Sampson appeals from an order denying his application for post-conviction relief under NDCC Chapter 29–32.1. We affirm.

■ In April 1991, after completing his sentence for an October 1985 reckless endangerment conviction, Sampson, acting pro se, filed this application for post-conviction relief. Sampson alleged that he received ineffective assistance from his appellate counsel, who advised dismissal of his pro se direct appeal from a wrongly amended judgment and commitment. He alleged that several errors occurred during his trial that required reversal of his conviction. The trial court appointed new counsel to assist Sampson in seeking post-conviction relief. After reviewing the file and transcript of Sampson's trial, the trial court granted the State's motion to dismiss the application. The court concluded that Sampson was not entitled to an evidentiary hearing because he had failed to raise an issue or inference to create a genuine issue of material fact to support the application. *See* NDCC § 29–32.1–09. Sampson appealed.[1]

---

1. The trial court concluded that Sampson could seek post-conviction relief, even though his sentence had expired, because the reckless endangerment conviction was used to enhance a subsequent sentence in a different felony criminal conviction. *See Sampson v. State*, 478 N.W.2d 566 (N.D.1991). The United States Supreme Court has held that a defendant's completion of a sentence imposed as a result of a criminal conviction does not render a direct appeal from the conviction moot because of the collateral consequences stemming from a conviction, including consideration of the conviction in sentencing should the defendant again be convicted of a crime. *See Sibron v. State of New York*, 392 U.S. 40, 56, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968); *Minnesota v. Dickerson*, —— U.S. ——, ——, 113 S.Ct. 2130, 2135 n. 2, 124 L.Ed.2d 334 (1993).

The Uniform Post–Conviction Procedure Act, NDCC Chapter 29–32.1, does not include an express "in custody" requirement found in post-conviction procedure acts in other jurisdictions. *See, e.g., State v. Moore*, 190 Neb. 271, 207 N.W.2d 518, 519 (1973) [act extends relief only to those in custody and proceeding is moot after sentence has been served]. Rather, NDCC § 29–32.1–01(1) provides that any "person who has been convicted of and sentenced for a crime may institute a proceeding applying for relief under this chapter...." Language virtually identical to this has been interpreted to allow the filing of

In March 1985, Sampson was charged with attempted murder for firing a rifle at, and striking, Al Waldo. Sampson, represented by counsel, testified at his jury trial. He was acquitted of the attempted murder charge, but was convicted of the lesser-included offense of reckless endangerment, a class C felony. The jury also found that Sampson threatened Waldo "with imminent bodily injury with a firearm," thereby subjecting Sampson to a mandatory minimum sentence under NDCC § 12.1–32–02.1(2), of two years imprisonment without benefit of parole. After the verdict, the trial court informed Sampson of the mandatory minimum sentence:

> "The crime of reckless endangerment carries a maximum penalty of five years imprisonment and/or a $5,000 fine. Our law further provides that there is a minimum prison term for an armed offender in this instance, and this is a mandatory sentence that must be served, a minimum sentence of two years imprisonment. Stated differently, the maximum punishment here by way of imprisonment is five years imprisonment with a mandatory requirement of service of two years of that term."

The court adjourned, pending completion of a presentence report.

During the sentencing hearing, the trial court found that Sampson was not a dangerous special offender, as defined by NDCC § 12.1–32–09. Sampson's attorney then unsuccessfully argued that Sampson should be sentenced to imprisonment for only the minimum two-year term, required by § 12.1–32–02.1(2). In pronouncing the sentence, the trial court stated:

> "IT IS THE JUDGMENT AND SENTENCE of this Court that you Dennis C. Sampson, be imprisoned in the State Penitentiary located in Burleigh County, North Dakota, for a term of five years at hard labor, such term to commence as of noon today....
>
> \*      \*      \*      \*      \*      \*
>
> "Now, Mr. Sampson, as I said earlier, how long you're going to be at the peniten-

tiary, there is this two year minimum that must be served."

A written "JUDGMENT AND COMMITMENT UNDER CHAPTER 12.1–32 NDCC" was entered on December 4, 1985. It was consistent with the trial court's oral sentence, except that it contained no language requiring Sampson to serve a minimum period of two years without benefit of parole. Sampson did not appeal from this judgment and commitment.

On February 3, 1986, the trial court entered an "AMENDED" judgment and commitment, to which the court added the following language to the original judgment and commitment:

> "The Jury having found that the defendant in committing the crime of Reckless Endangerment, a class C felony, was an armed offender, it is ORDERED as a further part of this sentence pursuant to 12.1–32–02.1 NDCC that he shall serve a minimum of two years imprisonment of the five year sentence above imposed without benefit of parole during such mandatory minimum two year period of imprisonment.
>
> \*      \*      \*      \*      \*      \*
>
> "During sentencing, the defendant was informed that because the Jury by verdict had found that he was an armed offender, he must serve a mandatory minimum term of two (2) years of the five (5) year term imposed by the above sentence without benefit of parole."

This amended judgment and commitment was "entered nunc pro tunc as of December 4, 1985."

Sampson, acting pro se, appealed from the amended judgment and commitment, asserting that it was entered "without my presence." The trial court then appointed different counsel to represent Sampson on appeal. In March 1986, Sampson's counsel filed a motion to dismiss the appeal, stating that he and Sampson had "fully discussed the appeal" and "mutually agreed" to withdraw it. The motion was granted. Sampson's counsel

---

post-conviction relief applications after the applicant's sentence has expired. *See Wenck v. State,* 320 N.W.2d 567, 569 (Iowa 1982). But, we need

not resolve the issue because the State has not challenged Sampson's ability to attack his conviction at this time.

then filed a Rule 35, NDRCrimP, motion for reduction of sentence. That motion was denied by the trial court.

With that rather extensive background, we now consider the merits of Sampson's appeal from the denial of post-conviction relief. Sampson asserts that he received ineffective assistance from his prior appellate counsel. He claims that appellate counsel wrongly advised him to dismiss the appeal from the amended judgment and, instead, seek a reduction in sentence because "to have appealed would have again subjected me to the possibility of being found a special dangerous offender. . . ." Sampson further alleges that his appellate counsel found "fault with my allegations . . . without having read the transcript [or] attended the trial. . . ." The record contains no response from Sampson's appellate counsel to these allegations.

■■■ We apply the same standard of analysis to a claim of ineffective assistance of appellate counsel as we do to a claim of ineffective assistance of trial counsel. *See Smith v. Murray,* 477 U.S. 527, 535–536, 106 S.Ct. 2661, 2666–2667, 91 L.Ed.2d 434 (1986); *People · v. Reed,* 198 Mich.App. 639, 499 N.W.2d 441, 445 (1993). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient representation by counsel and prejudice caused by the deficient representation. *Woehlhoff v. State,* 487 N.W.2d 16, 17 (N.D.1992). In other words, "a 'defendant must show that counsel's representation fell below an objective standard of reasonableness' *and* that the defendant was prejudiced by such ineffective representation, that is[,] 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Houle v. State,* 482 N.W.2d 24, 26 (N.D.1992) [emphasis in original; quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984) ].

■■■ Under the first element of the *Strickland* test, the defendant must show that counsel made errors so serious that he or she did not function as the "counsel" guaranteed a criminal defendant by the sixth amendment. *State v. Sayler,* 443 N.W.2d 915, 918 (N.D.1989). As to the second ele-

ment, the United States Supreme Court has recently emphasized that a proper analysis of prejudice should not focus solely on "outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). *See also Sampson v. State,* 478 N.W.2d 566, 570 (N.D.1991). Rather, the determination of prejudice must focus "on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair" and "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart, supra,* —— U.S. at ——, 113 S.Ct. at 844. Failure of the defendant to establish both deficient representation and prejudice is fatal to a claim of ineffective assistance of counsel. *State v. Skjonsby,* 417 N.W.2d 818, 822 (N.D.1987).

■■■ Ordinarily, a claim of ineffective assistance of counsel is unsuited to summary disposition without an evidentiary hearing. *See State v. Wilson,* 466 N.W.2d 101 (N.D. 1991). However, viewing Sampson's allegations in the light most favorable to Sampson, as we must under the summary disposition procedures of NDCC § 29–32.1–09, *see Wilson, supra,* 466 N.W.2d at 105, and, even assuming that his appellate counsel's performance was deficient, we conclude that Sampson is not entitled to a hearing or postconviction relief because he has failed to raise a genuine issue of material fact that he was prejudiced by his counsel's failure to pursue the appeal of his conviction.

■■■ Sampson argues that the trial court wrongfully amended his five-year sentence by including a "minimum mandatory" provision without Sampson's presence, resulting in a "more onerous" sentence. We disagree.

■■■ If there is a direct conflict between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement controls and the only sentence that is legally cognizable is the actual oral pronouncement made in the presence of

the defendant. *United States v. Munoz–Dela Rosa,* 495 F.2d 253, 256 (9th Cir.1974); *see Davidson v. Nygaard,* 78 N.D. 141, 48 N.W.2d 578, 583 (1951); *State ex rel. Perry v. Garecht,* 70 N.D. 599, 297 N.W. 132, 134 (1941); *see also State v. Bryan,* 316 N.W.2d 335, 337 (N.D.1982). Here, in orally pronouncing sentence, the trial court informed Sampson that he must serve a minimum of two years at the penitentiary. But, the written judgment and commitment did not include the two-year minimum required by § 12.1–32–02.1(2).

Rule 36, NDRCrimP, says that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." The identical federal counterpart to our Rule 36 has been recognized as providing "the appropriate remedy to make the judgment and commitment papers conform to the sentence pronounced orally...." 3 Wright, *Federal Practice and Procedure* § 611, at p. 527 (1982), and cases collected therein. Moreover, "[c]lerical error in a judgment and commitment ... may be corrected by the court on its own motion, without notice." 5 Rhodes, *Orfield's Criminal Procedure under the Federal Rules* § 36.12, at p. 492 (1987), and cases collected therein.

The amended judgment and commitment did not make Sampson's sentence "more onerous." It merely corrected the clerical mistake in the original judgment by including the statutorily required mandatory minimum sentence that the trial court originally orally imposed. A nunc pro tunc order was appropriate to correct this clerical omission, *see Hastings Pork v. Johanneson,* 372 N.W.2d 868, 870 (N.D.1985), and Sampson's absence when the amended judgment and commitment was entered did not affect any of his substantial rights. *See, e.g., Cook v. United States,* 426 F.2d 1358, 1360 (5th Cir.) *cert. denied,* 398 U.S. 932, 90 S.Ct. 1831, 26 L.Ed.2d 97 (1970); *Flowers v. State of Oklahoma,* 356 F.2d 916, 917 (10th Cir.1966); *People v. Smith,* 35 Mich.App. 349, 192 N.W.2d 626, 627 (1971). Sampson would have had no probability of success advancing this issue in a direct appeal, nor was he deprived of any substantive or procedural right in the court's amendment of the judgment and commitment. *Lockhart, supra.* Therefore, he has failed to establish prejudice.

Sampson also argues that his conviction for reckless endangerment should be reversed because he was defending himself from Waldo but the jury was not instructed on the law of self-defense. Under NDCC § 12.1–05–03, a "person is justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury...." Deadly force is justified if it "is necessary to protect the actor or anyone else against death, serious bodily injury, or the commission of a felony involving violence," but not "if it can be avoided, with safety to the actor and others, by retreat or other conduct involving minimal interference with the freedom of the person menaced." NDCC § 12.1–05–07(2)(b). A defendant is entitled to a self-defense instruction if there is evidence in the case sufficient to raise a reasonable doubt on the issue. *State v. Thiel,* 411 N.W.2d 66, 67 (N.D.1987). Sampson's trial counsel did not request a self-defense jury instruction and the trial court did not give one. This is understandable because, viewing the evidence in the light most favorable to Sampson, *see Thiel, supra,* we find no evidence to support his claim of self-defense.

At trial, Waldo's testimony and Sampson's testimony did not differ in any material respect. Their descriptions of the incident are virtually identical. Waldo's marriage was deteriorating and Sampson was having a relationship with Waldo's wife, Linda. Sampson testified, and Waldo agreed, that approximately three months before the incident leading to the criminal charge, Waldo had physically beaten Sampson without provocation in Sampson's trailer. Sampson and Waldo also testified that approximately two weeks after the beating, Waldo returned to Sampson's trailer and showed Sampson a handgun. According to Waldo, the purpose was "[t]o show him I had one." Sampson took that as "an implied threat, you were

supposed to understand that he had it, you know."

More than two months later, on March 24, 1985, Sampson and Linda had an argument, during which Linda was injured. Linda left and told Waldo, who got on his motorcycle to find Sampson. Waldo encountered Sampson driving his car on a gravel road and both stopped. Waldo remained seated on the motorcycle about six feet from the driver's side of Sampson's car. Sampson, who was intoxicated, remained in the car. Waldo had no weapons and did not touch Sampson or the car. According to Sampson, Waldo "made a bunch of threats," but "most of it was just mouthing off." Sampson told him to leave, but Waldo kept "mouthing off until I stuck the rifle out and shot a round in front of him." Waldo attempted to leave, but had difficulty starting the motorcycle. Sampson fired a second shot about "[t]wo or three feet" behind Waldo. Waldo finally started the motorcycle and drove down the road at high speed. Sampson then fired a third shot "just alongside of him." Sampson fired two more times. The fifth shot, fired at a distance of approximately 1,200 feet, struck the motorcycle's license plate and rear tire and entered Waldo's leg. Sampson admitted that he "wasn't threatened" when Waldo was driving away.

Waldo's prior assault of Sampson and his "implied threat" with the handgun do not support Sampson's theory of self-defense. At the time of the shooting incident, Sampson was not in danger of imminent unlawful bodily injury and, in any event, he could have safely retreated without using the rifle. *See* NDCC §§ 12.1–05–03 and 12.1–05–07(2)(b). The record clearly shows that Sampson was not entitled to a self-defense instruction.

■ Sampson next asserts that his conviction should be reversed because he was denied his confrontation rights by the State's successful motion in limine to preclude inquiry into Waldo's arrest for felony theft. Those charges were pending against Waldo at the time of Sampson's trial.

■ The sixth amendment right to confront witnesses in a criminal trial includes the prerogative to conduct reasonable cross-examination of witnesses. *State v. Reinart*, 440 N.W.2d 503, 506 (N.D.1989). Nevertheless, the scope of cross-examination is necessarily a matter involving the trial court's discretion. *State v. Padgett*, 410 N.W.2d 143, 147 (N.D.1987). Rule 609(a), NDREv, attempts to set the contours of reasonable cross-examination by allowing impeachment of a witness by evidence that the witness was "convicted" of certain crimes. However, Rule 609 does not allow the use of prior arrests for purposes of impeachment. *E.g., Medrano v. City of Los Angeles*, 973 F.2d 1499, 1507 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993). The rationale for the rule is simple. "Under our constitutional scheme a defendant is presumed innocent until proven guilty, and therefore an arrest, without more, is quite consistent with innocence and yet its mention may prejudice the jury...." *United States v. Labarbera*, 581 F.2d 107, 109 (5th Cir.1978). Sampson's confrontation rights were not violated by the trial court's proper granting of the State's motion in limine.

■ Sampson also argues that his conviction cannot stand because Waldo committed perjury in exchange for a "deal" in the form of a reduced sentence for the felony theft charges, pending against Waldo at the time of Sampson's trial. Sampson claims that Waldo received a deferred imposition of sentence on the theft charges, in exchange for his testimony and that this constituted prosecutorial misconduct.

■ A prosecutor's knowing use of perjured testimony violates the due process clause. *State v. Robideaux*, 493 N.W.2d 210, 216 (N.D.1992). The Iowa Supreme Court has summarized the elements of a successful claim of this kind of prosecutorial misconduct:

"[A] defendant must prove: (1) that the prosecution either introduced or failed to correct false testimony; (2) that the false or perjured testimony was given at trial; (3) that the prosecution knew the perjured testimony was false; (4) that the testimony was 'material'; and (5) that the defendant has not waived the claim by failing to raise

it at trial if he had reason to know of the falsity of the subject testimony."

*Jones v. State,* 479 N.W.2d 265, 275 (Iowa 1991). *See also Hamann v. State,* 324 N.W.2d 906, 909–910 (Iowa 1992).

█ The only testimony that Sampson has identified as false is Waldo's alleged denial that he received any promises, inducements, or consideration in return for his testimony. However, the record does not disclose any such testimony by Waldo. When there is a contradiction between the record and the unsupported assertions of the defendant, we must accept the record. *State v. Gilley,* 289 N.W.2d 238, 241 (N.D.1980). Sampson's conclusory allegation that Waldo's reduced sentence for the felonies "would indicate that these charges were used to coerce testimony which would otherwise not freely have been given," is inadequate to raise a genuine issue of fact about Sampson's claim of perjured testimony.

We have considered the other arguments raised by Sampson and deem them to be without merit. Because Sampson enjoyed no probability of prevailing on direct appeal on any of the alleged errors that occurred at his trial, and because he suffered no deprivation of substantive or procedural rights, Sampson has failed to show prejudice resulting from appellate counsel's advice to dismiss the appeal. Therefore, he has failed to establish ineffective assistance of counsel. We conclude that the trial court did not err in dismissing Sampson's application for post-conviction relief.

The order is affirmed.

VANDE WALLE, C.J., MESCHKE and SANDSTROM, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.