**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Thomas Andrew McALEAR, Defendant and Appellant.**

No. 18539.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1994.

Decided July 13, 1994.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Patricia C. Riepel, Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

SABERS, Justice.

This is an intermediate appeal in which Defendant claims a violation of the prohibition against double jeopardy contained in the Fifth Amendment of the United States Constitution. We agree that jeopardy attached and reverse and remand with directions.

### FACTS/PROCEDURAL HISTORY

On August 19, 1993, a Minnehaha County Grand Jury returned a two count indictment (aggravated assault and kidnapping) against Thomas McAlear. After negotiations with the prosecutor, McAlear agreed to plead guilty to simple assault in return for the prosecutor's dismissal of the aggravated assault and kidnapping charges. The plea bargain agreement further specified that McAlear would serve 92 days in jail, during which time he would be required to enter and successfully complete an alcohol treatment program. It was agreed that McAlear would be allowed work release and would be required to make restitution to the victim.

A plea hearing was held before Judge William Srstka on September 15, 1993. After being advised of the existence of a plea bargain agreement, Judge Srstka proceeded to advise McAlear of his rights and the nature and consequences of a guilty plea. McAlear pled guilty to simple assault. At the Judge's request, the state's attorney outlined the factual basis for the plea. The following is a verbatim transcript of what occurred next (with emphasis added).

The Court: Very well. Do you agree with that statement of the facts, Mr. McAlear?

McAlear: Yeah. I would have to say yeah.

The Court: Ms. Riepel, do you agree with that statement of the fact?

Ms. Riepel: Yes.

The Court: I find that the plea is voluntary, that the defendant is represented by competent counsel, has been advised of his rights, is aware of the nature of the charges against him and the penalties thereon. There is a factual basis for the plea. **I accept the plea and find you guilty of simple assault.**

Now, before I impose sentence, you have a right to a delay of at least 48 hours. If you give up that 48 hours, I'll sentence you now.

McAlear: Yes, sir, I give that up.

The Court: All right. What do you have to say on your own behalf.

McAlear: I wish to finish this treatment program that I've been on for the last three weeks. I just choose to go back to work and back to my home church.

The Court: What church is that?

McAlear: Central Baptist Church on 8th and Spring. I'm going to seek more spiritual guidance and counseling.

The Court: Have you been a regular church goer or did you just start?

McAlear: For around six or seven months I've been a member of Central.

The Court: All right. Anything else?

McAlear: That will be it.

The Court: Ms. Riepel, anything you want to say on your client's behalf?

Ms. Riepel: I believe he has spoken on his own behalf. I would indicate that he does have a job. His employer did make the effort of calling me and I did return that call. There is a job. I guess we would like to get him sentenced today so we can get him over to the new facility. He has done three and a half weeks of the alcohol program already and that was not at my encouragement. He did that himself to be square with the judge. I indicated to him that he would have to restart that program over at the new work release facility. He can't use that three weeks. He said that's fine.

The Court: He has done 32 days already?

Ms. Riepel: I believe my calculations indicate he was arrested August 13 and he has been in custody since that. Seventeen days in August and 15 days in September, 32 days. I would suggest for the Court whatever time you want to give him, I would suggest 100 days actual, credit for time served and then when I come back, if he finishes the program within the 60 days, I can come back and have that remaining time suspended along with the rest of the other. Do you have a better way of calculating that?

Ms. Sittig: I was going to suggest that the Court order a year in jail and suspend all but 92 days. That would give him credit for what he served so far with additional [sic] of 60 days with the option of coming back before the Court and asking or requesting a reduction if he is doing okay with treatment and work release.

The Court: I don't often give reductions. I want you to know that right now. If that is going to make a difference to you, I'll let you withdraw your plea. I usually don't give reductions.

McAlear: I have no problem about that, sir.

The Court: Very, very rarely do I give a reduction.

All right. Does the State have any recommendations?

Ms. Sittig: Well, I guess I started to make that recommendation. I recommend that the Court impose a year in jail and suspend all but 92 days, give him credit for 32 he served. That will give him an additional 60 days with work release. I request that he be required to complete the alcohol treatment program at the new work release facility, that he pay restitution for the medical bills of the victim. I haven't yet obtained those although I have obtained a release from the victim. I did notify her. We had set this for sentencing Monday. I notified her of that and also notified of the sentencing today. She doesn't have a phone so it was done by letter and I can't say that she was notified but we tried two different methods to notify her.

The Court: You have talked to the victim about this plea bargain? Has anybody talked to the victim?

Ms. Sittig: Not specifically. When she came in to testify at the grand jury, at that time she was concerned about the defendant losing his job.

The Court: Are they still living together?

Ms. Sittig: I got the impression that the relationship was probably going to be over and she had only come here from California to join him within a couple of weeks of when this happened. So, I'm just not sure of what her arrangements are at this point.

The Court: I understand about getting him sentenced today.

Ms. Riepel: I have spoken with the victim.

The Court: What did the victim have to say?

Ms. Riepel: She stopped over to my office prior to this plea bargain being offered. However, it was clear to me that she was very interested in him getting some alcohol treatment and she didn't want him being incarcerated a long time. Let me see if I can see my notes.

The Court: All right. Well, I guess we won't—are both attorneys satisfied that the victim is comfortable with this?

Ms. Sittig: I can't say that from my personal knowledge. I did discuss with her we might offer a reduction in the charge and she seemed to think that was a good idea. She didn't really want to see the defendant serve a lot of jail time but I think our victim assistant had contact with her after that and she was kind of, I guess she seemed a little bit more inclined to proceed with the prosecution with our victim assistant than she was with me. But we have discussed several options with her. I can't say from personal knowledge. I wasn't able to get her here.

\*    \*    \*    \*    \*    \*

The Court, Well, we are going to wait 48 hours. I don't have anything on Friday now. The jury trial we had yesterday settled. 2:00 Friday. Is that convenient for every one?

Ms. Riepel: I have a 1:30 appointment. I should be done by 2:00. I might be a little late.

The Court: That will be 48 hours. If you don't find her by then I'll accept the plea bargain. I think as badly as she looked to me and looked in that picture, I think under the victims (sic) assistance statute I would find that it would be necessary to listen to the victim and give her a chance to have her say if she wants to have it.

We'll stand in recess then.

At the sentencing hearing held two days later, the prosecutor informed the trial court that the victim was not content with the plea bargain and was willing to testify. The following discussion took place.

The Court: All right. Now I told both the State's attorney—I will state this on the record—I told the Deputy State's Attorney and the Deputy Public Defender that I intended to reject this plea bargain if the victim would testify. The Deputy Public Defender I know takes exception to that.

Ms. Riepel: If I may be heard?

The Court: You may be heard.

Ms. Riepel: My understanding the last we were in court, we entered a plea. A plea was entered on the condition that two others be dismissed. So he entered his plea. He entered his part of the plea bargain. That was entering the plea of guilty to simple assault. This Court found a factual basis. This Court was ready to proceed to sentencing thereby in effect accepting the plea bargain.

The Court: I don't think I accepted it.

Ms. Riepel: By saying I'm ready to proceed to sentence, I beg to differ.

The Court: The thing on my sheet here, point 39, I can make a copy of this and put it into evidence, I always read that before I accept the plea bargain and I had not accepted it yet because I hadn't heard from the victim. Point 37 is for the victim. I always ask is any victim present who wishes to comment concerning the emotional, physical and monetary impact of the defendant's crime upon him, I guess it would be her in this case, and make a recommendation for the sentence. Point 38—now, these

points are my own personal points that I type on my sheet and if the victim addresses this Court I say quote does the defendant wish to respond to any part of the statement made by the victim. At your request I will grant a reasonable continuance to allow you to refute any inaccurate or false charges made by the victim. Point 39 is the plea bargain and if I accept the plea bargain I say quote regarding the plea bargain I accept the plea bargain and I will embody in the judgment and sentence the disposition provided for in the plea bargain. I hadn't said that, I don't think.

Ms. Riepel: I don't have a perfect recollection. My notes indicate that you did. We were arraigned on the simple assault. We waived a preliminary hearing and a factual basis was found on it and then you asked whether or not we wanted to proceed to sentencing or wait 48 hours and my client said that he would proceed to sentencing and then you asked the State if their victim was present. Then you indicated that well we'll wait until Friday to see if she shows up as far as her input is concerned. At this point I don't believe two things. I don't believe the State is able to withdraw the plea bargain. We have fulfilled our part of the deal and to be quite honest with you, my understanding with Deb is that she had a difficult time communicating with this witness. She knew this witness. She had been at the grand jury. That plea bargain was made with this in mind. Now we come before the Court at this point. Double jeopardy I believe has attached because now by dismissing charges he will be in double jeopardy in that he has already admitted to the simple assault, took a factual basis and the fact this happened. The factual basis entailed both of those charges. That precludes him from getting on the stand at trial.

The Court: I don't know about that.

The trial judge then "rejected" the plea bargain. On October 18, 1993, McAlear filed a motion to reconsider with the trial court. After a hearing on the matter the trial court denied the motion and scheduled a trial on the aggravated assault and kidnapping charges. McAlear filed a petition with this Court requesting permission to proceed with a discretionary appeal. This Court granted the discretionary appeal and entered an order staying any further proceedings in the lower court.

## DECISION

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273 (1976). "Naturally, no question of double jeopardy arises unless jeopardy has first attached sometime prior to what the defendant seeks to characterize as the 'second' prosecution." *Fransaw v. Lynaugh,* 810 F.2d 518 (5th Cir.1987) *cert. denied* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987). Thus, the question of when jeopardy first attached must be answered.

■ In the case of a plea bargain, jeopardy attaches when the court accepts the guilty plea. *Fransaw,* 810 F.2d at 523. Numerous other courts have reached the same conclusion. *See U.S. v. Baggett,* 901 F.2d 1546 (11th Cir.1990) *cert. denied* 498 U.S. 862, 111 S.Ct. 168, 112 L.Ed.2d 133 (1990); *U.S. v. Britt,* 917 F.2d 353 (8th Cir.1990) *cert. denied* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *U.S. v. Bullock,* 579 F.2d 1116 (8th Cir.1978) *cert. denied* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *Riadon v. U.S.,* 274 F.2d 304 (6th Cir.1960) *cert. denied* 364 U.S. 896, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960); *U.S. v. Smith,* 912 F.2d 322 (9th Cir.1990); *U.S. v. Jerry,* 487 F.2d 600 (3rd Cir.1973); *State v. Comstock,* 168 Wis.2d 915, 485 N.W.2d 354 (1992). *But see U.S. v. Santiago Soto,* 825 F.2d 616 (1st Cir.1987).

■ In light of the weight of the authority against it, State does not strenuously claim otherwise. Instead, State argues that Judge Srstka did not accept McAlear's guilty plea. Alternatively, State argues that if the plea was accepted it was accepted on the condition that the victim acquiesce in the plea

bargain. The transcript quoted above demonstrates otherwise. After informing McAlear of his rights and establishing a factual basis for the plea, the trial court unequivocally stated: *"I accept the plea and find you guilty of simple assault."* The trial court did not impose any conditions to his acceptance of the plea. The trial judge then proceeded to the sentencing. The trial judge inquired whether McAlear wished to be sentenced then or in 48 hours. McAlear chose to face immediate sentencing. During discussions about the sentence the court became concerned about the victim's opportunity to consider the plea bargain.

The trial court clearly and unconditionally accepted McAlear's guilty plea. Jeopardy attaches as soon as the plea is accepted, even before the defendant is sentenced. *Sampson v. State,* 478 N.W.2d 566 (N.D.1991). State argues that McAlear cannot complain because only a couple of minutes elapsed between the trial court's acceptance of the guilty plea and the trial court's expression of concern about the victim. We cannot agree with the proposition that jeopardy may be "unattached" if only a short time has elapsed since it attached.

The trial court accepted McAlear's guilty plea and declared him guilty of simple assault. At that point in time jeopardy attached. Subsequently the trial judge had some second thoughts about accepting the guilty plea. Nevertheless, jeopardy had already attached and based upon the authorities previously cited herein, McAlear could not be tried for aggravated assault and/or kidnapping without a violation of the Constitution's prohibition on double jeopardy.

We reverse the trial court and remand for sentencing on the simple assault charge.

WUEST, HENDERSON and AMUNDSON, JJ., concur.

MILLER, C.J., dissents.

MILLER, Chief Justice (dissenting).

I dissent, as in my opinion jeopardy did not attach in this case. It is well settled law that "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v.*

*United States,* 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265, 277 (1975).

The majority cites *Fransaw* for the proposition that in the case of a plea bargain, jeopardy attaches when the court accepts the guilty plea. *Fransaw v. Lynaugh,* 810 F.2d 518 (5th Cir.1987), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987). However, for authority *Fransaw* relies on *United States v. Sanchez,* 609 F.2d 761, 762 (5th Cir.1980) and clearly cites *Sanchez* for the proposition that "acceptance must be unconditional." *Fransaw,* 810 F.2d at 523. *Sanchez* explicitly limits the attachment of double jeopardy to situations where the court has unconditionally accepted a plea bargain.

> The plea agreement and the plea were inextricably bound up together, and acceptance or rejection of one by the judge meant acceptance or rejection of the other ... The judge in this case took the middle road—she accepted the agreement conditionally while at the same time deferring her final decision until she had studied the probation report. Her chosen path may not have been the wisest under the circumstances; certainly it was not error.... no final judgement was entered on the lesser included offense, Sanchez has not been subjected to the harassment of successive prosecutions and there is no question of multiple trials or multiple punishments. Because the judge made it clear that she was taking the agreement under advisement, jeopardy did not attach and she acted within the bounds of her discretion in rejecting the agreement and the plea after full consideration of the case.

*Sanchez,* 609 F.2d at 762–63; *see also United States v. Baggatt,* 901 F.2d 1546, 1548 (11th Cir.1990) (citing *Sanchez, supra,* "[i]n the case of a plea bargain, with respect to the offense pleaded to, jeopardy normally attaches when the court unconditionally accepts the plea bargain"), *cert. denied,* 498 U.S. 862, 111 S.Ct. 168, 112 L.Ed.2d 133 (1990).

The other cases relied on by the majority are easily distinguished. The case of *United States v. Bullock,* although it states "jeopardy would attach when a plea of guilty is accepted" does not address the question of

whether the court actually accepted the plea. *United States v. Bullock,* 579 F.2d 1116, 1118 (8th Cir.1978) (finding where conviction based on guilty plea was vacated, double jeopardy did not prevent subsequent trial on all charges brought in original indictment), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978). Similarly, *Smith* does not address the question of whether a court has accepted a plea agreement. *United States v. Smith,* 912 F.2d 322, 324 (9th Cir. 1990) ("[j]eopardy ordinarily attaches upon the court's acceptance of a plea agreement"). In *U.S. v. Britt,* the court did not discuss whether the plea had been accepted, it "assumed for the purposes of this discussion" that the plea had been accepted and jeopardy had attached. *U.S. v. Britt,* 917 F.2d 353, 356 n. 3 (8th Cir.), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991). In *Riadon,* the court stated in dicta that double jeopardy attached in situations where a guilty plea "was allowed to stand." *Riadon v. United States,* 274 F.2d 304, 306 (6th Cir.1960) (finding acceptance of guilty plea in one case did not bar prosecution of another charge in subsequent case), *cert. denied,* 364 U.S. 896, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960). Under *Riadon's* rationale, the trial court's rejection of McAlear's plea bargain would mean the guilty plea was not allowed to stand, thus, jeopardy did not attach.

The case of *State v. Comstock,* 168 Wis.2d 915, 485 N.W.2d 354 (1992), upon which McAlear relies, is also clearly distinguishable. In *Comstock,* after hearing testimony from the victim, dismissing felony charges and accepting guilty pleas to reduced charges, the circuit court *sua sponte* vacated the guilty pleas in a subsequent proceeding. In the original proceeding, the judge "stated his understanding of the plea agreement on the record." *Id.* 485 N.W.2d at 359. Thus, the trial court had accepted both the plea and the plea bargain. In this case, during the original hearing, the trial court clearly stated: "If you don't find [the victim] by then I'll accept the plea bargain." This was not unconditional acceptance of the plea bargain. Moreover, the trial court did not dismiss the charges contained in the original indictment.

Additionally, there is case law which holds that double jeopardy does necessarily attach even at the time a court unconditionally accepts a guilty plea. *United States v. Santiago Soto,* 825 F.2d 616, 618 (1st Cir.1987) (jeopardy did not attach when court accepted guilty plea and subsequently rejected plea without having imposed sentence); *United States v. Cruz,* 709 F.2d 111, 113–14 (1st Cir.1983) ("we do not think that jeopardy must attach automatically and irrevocably in all instances when a guilty plea is accepted ... We agree that jeopardy must attach somewhere, but acceptance of the plea is not the only possibility."). As the Supreme Court of Vermont stated:

> First, the rule is only that jeopardy "generally" attaches at the time of acceptance of the guilty plea, the rule has exceptions. The attachment of jeopardy upon the court's acceptance is neither automatic nor irrevocable.... The issue here is not whether defendant was subjected to the kind of government overreaching that the double jeopardy clause was designed to prevent. Rather, it is a much narrower and simpler one—whether the court ought be able to correct a mistake. The court's decision not to appoint counsel for defendant was based on incomplete information.... The court simply corrected the mistake by erasing the plea acceptance and proceeded to treat the case as it should have been treated from the outset. Although it would have been better practice for the court to have made a more through inquiry ... under the facts presented here jeopardy did not attach. And, even if we were to follow a procrustean analysis that jeopardy did attach, it was not irrevocable.

*State v. Duval,* 156 Vt. 122, 589 A.2d 321, 324–25 (1991) (citations omitted); *State v. Todd,* 654 S.W.2d 379, 383 (Tenn.1983) ("jeopardy does not attach at a hearing on a guilty plea until the plea is unconditionally accepted.... Until a final judgment is entered a court is free to reject the plea and plea agreement. Rejection of one is rejection of the other."); *accord State v. Kay,* 717 P.2d 1294, 1304 (Utah 1986) ("by permitting the declaration of a misplea under appropriate circumstances, the legitimate interest of

the public in assuring that criminal prosecutions are not frustrated by a clumsy application of the double jeopardy clause is protected."

Here, the trial court accepted McAlear's guilty plea but deferred accepting the plea bargain when it discovered the victim had not been allowed to present her viewpoint. Where there was not unconditional acceptance of the plea by the trial court, double jeopardy did not attach; therefore, I respectfully dissent.